BUREL v. EAST ARKANSAS LUMBER COMPANY.

Opinion delivered May 7, 1917.

1.  MECHANIC'S LIENS—TWO OR MORE LOTS—SINGLE CONTRACT.—A lien exists in favor of a material man upon two or more lots, where the materials are furnished under a single contract for buildings to be constructed upon two or more lots which are not contiguous.

2.  APPEAL AND ERROR—FACT—FINDING OF CHANCELLOR.—A finding of fact by the chancellor will be upheld on appeal unless against the clear preponderance of the evidence.

3.  MECHANIC'S LIENS—ERECTION OF BUILDINGS UNDER ONE CONTRACT.— In an action to enforce a lien by a material man upon several lots, the evidence *held* to show that the materials were furnished under a single contract.

4.  MECHANIC'S LIEN—LIMITATIONS.—The evidence *held* to show that materials were furnished by plaintiff and used in defendant's several buildings under one contract, and that a lien therefor was filed in time.

Appeal from Lawrence Chancery Court; *George T. Humphries,* Chancellor; affirmed.

*W. E. Beloate,* for appellants.

1.  It was error to render a personal judgment against the owner of the building.  24 Ark. 151.

2.  The action was not filed within the 90 days so as to preserve the lien.  115 Ark. 231; 119 *Id.* 43.  The date of the last material furnished governs.  119 Ark. 461; 114 *Id.* 466; 107 *Id.* 245.  If there was an abandonment, all the materials used prior thereto would be too late to sustain the lien.  51 Ark. 316.  Lemay, the painter, should have been made a party.  122 Ark. 144; 114 *Id.* 466.

2.  Appellee had no lien on the separate buildings unless all were erected under *one contract* by Mrs. Burel with Young.  119 Ark. 461; 84 *Id.* 560; 63 *Id.* 367.  See, also, 45 Minn. 61; 47 N. W. 318.  The contract must be entire for all the buildings.  54 Ark. 93; 84 *Id.* 563.  The lien

claimed is under Kirby's Digest, § 4970. A joint lien on several buildings, on separate lots can not be maintained where the contracts are separate. 49 Atl. 521; 28 S. E. 875.

3. The prices charged were too high. As to the owner the contract does not govern, but the market value does. 51 Ark. 315; Tiedeman on Sales, § 332.

4. Appellee does not come into court with "clean hands." There were overcharges and an attempt to skin the owner. No interest should be allowed. 86 Ark. 162.

*Huddleston, Fuhr & Futrell* and *Ponder, Gibson & Ponder,* for appellee.

1. No personal judgment was intended against Mrs. Burel, and really there is none.

2. The action was within the 90 days from the last item of the account. 84 Ark. 562. No notice was ever given appellee of abandonment or change of relationship. The entire work was one continuous connected transaction. 80 S. W. 690; 19 N. W. 898; 93 Pac. 765; 15 L. R. A. (N. S.) 299; 119 Ark. 454; Rockel on Mechanic's Liens, 256, § 99.

No notice was given nor is it certain there were separate contracts. The contract was entire and the lien extended to all the buildings, including all extra work. 19 N. W. 898; 119 Ark. 454.

3. There was no abandonment. The work was all done under one contract and the lien extended to all the buildings and lots. 27 Cyc. 145-6; 43 N. E. 976; 51 Atl. 575; 43 L. R. A. (N. S.) 158; Rockel on Mech. Liens, § 94; 54 Ark. 93; 74 Am. St. 557; 20 Am. & Eng. Enc. (2 ed.). 359; 119 Ark. 454.

4. The prices charged were reasonable and proper —the market value only was charged. Rockel on Mech. Liens, § 126; 74 Pac. 708.

5. Appellee's hands are clean. There is no evidence of an attempt to defraud.

6. Interest was properly allowed. Rockel on Mech. Liens, § 126; 27 Cyc. 214; 84 N. E. 181.

7. The law was intended to secure workmen, mechanics and material men for their labor and the materials furnished, and is liberally construed. 105 Ark. 146.

HART, J. Mrs. Lizzie Burel entered into a contract with T. I. Young for the erection of four different business buildings on different lots in the same block in the town of Walnut Ridge, Arkansas. One of the buildings had frontage enough for two business places, and there was an alley in the block which separated the buildings. This is a suit instituted in the chancery court by the East Arkansas Lumber Company against Mrs. Lizzie Burel and T. I. Young to foreclose a lien for materials furnished and used in the construction of the houses and also to recover judgment against Young for the price of the materials.

The plaintiff alleged that materials to the value of $5,987.53 were furnished and judgment is asked for this amount with accrued interest. At the trial of the case it was admitted that the materials were furnished by the plaintiff and were used in the construction of the buildings.

Mrs. Burel defended on the ground that the account was not filed and the suit was not instituted within ninety days after the materials were furnished as provided by the statute. She also claimed as a defense to the action, first, that the materials were not furnished or the work done under an entire contract for all the buildings; and, second, that the lots upon which the buildings were erected are not contiguous.

The chancellor found in favor of the plaintiff and rendered judgment for the amount sued for against T. I. Young, together with the accrued interest, and held that same was a lien upon the lots embraced in the complaint, and ordered the lots sold for the satisfaction of the judgment. The case is here on appeal.

(1) Counsel for the defendants first contend that the weight of authority is that a single mechanic's lien or lien for materials can not be filed against two or more sepa-

rate buildings located on lots which are not contiguous. It must be admitted that the authorities upon this question are in hopeless conflict; but we need not stop to consider where the weight of authority lies; for this court has already taken a position on this question adversely to the contention of counsel.

In the case of *Tenney* v. *Sly*, 54 Ark. 93, the court held that it is the entirety of the contract, and not the fact that the lots are contiguous that determines whether one or more liens shall be filed. In that case lumbermen under an agreement with the owner furnished lumber at different times for the construction of seven houses upon different lots. The lots had been used for agricultural purposes but were embraced in a plat filed by the owner and laid off into lots and blocks. The lots were contiguous except that two of them were separate from the other five by a space indicated on the plat as a street. This court said that the lien should have been sustained on the ground that the material furnished was charged to one account, and that the contract to furnish it was an entirety, and that the material was used in carrying out the plan of one building operation.

Again, this interpretation of the statute was approved in *Meek* v. *Parker*, 63 Ark. 367. In that case the property upon which it was claimed the lien existed consisted of two separate tracts of land over a mile apart. The lower court adjudged that the aggregate amount claimed was a lien upon both the tracts of land. This court denied the relief solely on the ground that it was not alleged or shown that the materials for the improvements were furnished under one contract. The court said that materials furnished for the improvement of one tract did not create a lien upon the other tract when the same were not furnished under an entire contract. It is true in *Central Lumber Co.* v. *Braddock Land & Granite Co.*, 84 Ark. 560, the court used this language, "Each building, however, was liable only for the materials furnished and labor done in its construction, unless the labor was per-

formed upon, and the materials were furnished for buildings upon the same or contiguous lots and under one entire contract, in which case all such lots would be jointly liable.''

It will be noted, however, that the language used was not necessary for a decision of the issues involved in that case as disclosed by the record. It is evident that the attention of the court was not specifically directed to the point at issue, and the language just quoted must be considered as *obiter*. It is not to be supposed that the court would change front on such an important question without discussing its earlier decisions and calling attention to the fact that it had overruled them. So it may be said that the contention that no lien could attach because the lots on which those buildings are situated were not all contiguous is settled against defendants by our earlier decisions on the question.

The reason given for the rule is that although the lien is a creature of the statute, it must have its foundation in a contract, and on this account must correspond with the contract. When materials are furnished under a single contract for buildings to be constructed upon two or more lots, it can not be expected of the material men to know how much is used upon each lot.

(2-3) This brings us to the question of whether the materials were furnished under an entire contract, and this we regard as an exceedingly close question of fact. The evidence on this point is in direct conflict. For the reason that the evidence is voluminous, it is not practical to set it out in detail and to make an extended discussion of it. We have carefully considered it, however, and deem it sufficient to state in brief the substance of it to the end that the conclusion we have reached may be followed. It is our duty to uphold the finding of the chancellor on a question of fact unless such finding is against the clear preponderance of the evidence, and a careful consideration of the evidence fails to convince us that the chancellor erred in finding that the buildings were erected under an

entire contract. It appears from the record that there was a very disastrous fire in the town of Walnut Ridge and the business houses owned by Mrs. Burel upon the lots in question as well as another lot, were burned down. She gave one of the lots to her brother, who entered into a contract for the erection of a building to be used as a drug store; and agreed to pay for the materials to be used in the construction of that building, but inasmuch as it is not involved in this suit, nothing further need be said about it. T. I. Young was the contractor for the erection of that building as well as for all the buildings involved in this suit.

Mrs. Burel and Young both testified that separate contracts were entered into for the erection of the buildings. There were four different buildings and one of the buildings had frontage enough for two store rooms. They testified that Mrs. Burel entered into separate contracts for the construction of these buildings, making a contract for each one as she procured a tenant therefor.

On the other hand, Ed Henry, the manager and bookkeeper for the East Arkansas Lumber Company, which furnished the materials, testified that Young told him that the buildings were all being erected under one contract, and that for this reason they were charged in one account, and that the contract was known as the "Burel Job;" that the materials were sent indiscriminately to the various buildings and that while some of them were commenced at an earlier time than the others, the construction of all of them was being carried on at the same time, and materials were sent there to be used in the construction of the buildings, and no effort made to separate the different items. In this respect he is corroborated by a teamster who delivered most of the materials. It appears that the contract with Young was only for the walls, floors, roof and back windows. Separate contracts were made for the painting and interior work, such as partitions, show windows, etc.

A witness, who made a contract with Mrs. Burel for some painting which he did on all the buildings, testified that at one time Mrs. Burel directed him to go to the East Arkansas Lumber Company and get the materials. Of course, the painting contract is not involved in this suit, but the evidence of this witness shows that the materials used in painting on the various buildings were all embraced in one account. This is a fact to be considered in determining whether the original contract for the construction of the buildings was an entire contract. Mrs. Burel herself attempted to keep an account of the cost of the various buildings under her contract with Young. She entered the items in regard to all of the buildings in the same account and no attempt was made by her to separate them. The cost of the various buildings, of course, varied, but the items were kept in one account tending to show that she regarded the construction of all the buildings as a general building operation. The buildings were erected to take the place of those which had been destroyed by fire.

Other evidence was introduced tending to show that the materials were carried indiscriminately from one building to another, and that no attempt was made to keep the items on each building separate; that Mrs. Burel lived in the same town and in person watched closely the erection of the buildings, knew that the materials were purchased from the plaintiff, and were used indiscriminately in the erection of the buildings.

The secretary and treasurer of the lumber company testified that while the buildings were being constructed he had a conversation with Mrs. Burel about the amount due his company, and was pressing her to make him a payment; that she stated that she did not want any lien filed against her property, and told him that she would give her note for a substantial amount equal to three or four thousand dollars in a few days. On the 21st of August, the company wrote her a letter stating the amount of materials that had been furnished to Young,

and the amount that had been paid. The letter referred to the amounts furnished as her job, and spoke of it as one building operation and one account. Mrs. Burel denied that she promised to give her note as testified to by the secretary and treasurer of the company, but the testimony, we think, just recited is competent as tending to show that the contract was an entirety and was so considered by Mrs. Burel.

Again, when the answer to the present action was filed, the contract was regarded as an entirety, and it was not until after the answer had been filed and some depositions taken in the case that the attorney for Mrs. Burel discovered that she claimed that the contracts were separate. He explained that she was not in the city at the time the answer was filed, and was not responsible for the allegations in it admitting the contract to be an entirety. The fact remains, however, that he had talked with Mrs. Burel about the matter, and with the view of writing her answer and otherwise preparing her defense to the action and gathered the impression from her that it was one contract. When we consider all these facts and circumstances it is manifest that the parties themselves treated the building operation as one general piece of work, and as above stated, the chancellor having so found, we do not think his finding can be said to be against the clear preponderance of the evidence.

(4). It is next contended that the account was not filed within ninety days as required by the statute. The account was filed on December 29, 1915, and the complaint was filed on December 30, 1915. The account shows that the items were furnished at various times, the last ones being on September 27 and 28 and October 2 and 8. It is contended, however, by counsel for the defendants that Young abandoned his contract early in August, and that Mrs. Burel then took charge and completed the work, and that the items charged in September and October could not be counted as of the date the last materials were furnished under the contract with Young. Both Mrs. Burel

and Young testified that Young abandoned the contract early in August, and that he had nothing further to do with it.

Mrs. Burel testified that she told Henry that Young had abandoned the contract, and that she would take charge of the buildings and complete them herself. Henry denied this, however. He stated that there was a disastrous flood in Arkansas in August of that year, and that Mrs. Burel told him that Young had been compelled to leave on that account, and she had personally taken charge of the construction of the buildings until he returned. The same crew of men continued to work on the buildings. The foreman admitted that when Young returned he came around the buildings and stated that he told him to do whatever Mrs. Burel directed him to do. He admitted, however, that Young told him to go ahead and complete the job under his contract for him and Mrs. Burel.

A witness who had the contract for painting the buildings, stated that the same crew of men was kept and that both Mrs. Burel and Young seemed to be in charge of the work after Young returned; that Young gave directions to the men as well as Mrs. Burel.

Another witness testified that he was hauling materials for the job and that Young made orders for materials after he came back; that Mrs. Burel told him she was going to stay there and push the job along; that she needed the buildings, and that this conversation with her, he thought, occurred after the flood.

Young denies that he exercised any control over the men after he came back, and both he and Mrs. Burel testified that she had exclusive charge; but when all the facts and circumstances are considered, we think the chancellor was warranted in holding that the materials were furnished in installments under one contract, and that the parties intended them to be included in one account and that the entire account should be treated as a continuous and connected transaction. In such cases the

lien limitation begins to run from the last item of the account, and the lien in the present case was not barred. *O'Neill* v. *Lyric Amusement Co.,* 119 Ark. 454. The proof shows that the items furnished in September and October were used in the construction of the buildings.

It follows that the decree of the chancellor must be affirmed.