PILCHER *v*. PARKER.

Opinion delivered April 25, 1927.

1. CONSTITUTIONAL LAW—LABORERS' LIEN—DUE PROCESS.—Acts 1923, p. 430, providing for a lien in favor of employees working in drilling operations for oil and gas, is not unconstitutional as taking property without due process, as the act provides for its enforcement in the manner now provided for enforcement of laborers' liens, in which the owners of the property on which the lien is sought to be enforced are necessary parties.

2. MINES AND MINERALS—LABORERS' LIEN—OWNERSHIP OF PROPERTY. —Acts 1923, p. 430, provides for lien in favor of employees on equipment used in drilling or operating oil or gas wells, irrespective of who may be the owner.

3. CONSTITUTIONAL LAW—DUE PROCESS.—The fact that one man's property may be taken for another's debt does not render unconstitutional Acts 1923, p. 430, providing for a lien in favor of employees on equipment used in oil and gas drilling operations, since the owner in leasing his equipment voluntarily subjects his property to such liens as are given by the statute.

4. MINES AND MINERALS—LABORERS' LIEN—REPEAL OF STATUTE.— Acts 1923, p. 430, providing for a lien in favor of employees on the equipment in oil and gas drilling operations was not repealed by Acts 1923, p. 499.

Appeal from Nevada Circuit Court; *J. H. McCollum*, Judge; affirmed.

*H. E. Rouse* and *John Marshall Shackleford*, for appellant.

*William F. Denman*, for appellee.

HUMPHREYS, J. This is a suit in replevin brought by appellant against appellee, the sheriff of the county, to recover the possession of an oil well rotary drilling rig complete, which had been seized by the sheriff under a writ of attachment issued in the case of L. M. Carter *et*

*al.* v. Prescott Oil Company, wherein judgment was rendered condemning said drilling rig to satisfy debts for labor performed in and about a certain oil test well being drilled with said rig, in favor of L. M. Carter *et al.* against the said Prescott Oil Company. Appellant alleged that he was the owner of the drilling rig and that he was entitled to the immediate possession thereof; that he had leased the drill for a monthly cash rental to the Prescott Oil Company, and was not interested in and had nothing whatever to do with drilling the well or employing laborers to drill same; that he was not a party to the suit in which the drill was attached and ordered sold to pay the Prescott Oil Company laborers, and was not bound by the seizure and judgment of condemnation; that the drill was seized under act 513 of the General Assembly of the State of Arkansas for the year 1923, which act is void for the reason that it violates the Constitution of the United States and the Constitution of the State of Arkansas inhibiting the deprivation of property without due process of law; that said act was repealed by act 615 passed by the same session of the Legislature.

Appellee filed an answer, admitting the seizure of the well drill under writ of attachment issued in a proceeding to enforce a lien for labor under said act 513, which was performed in and about the oil test well in question, but denying the unconstitutionality of the act or that same was repealed by said act 615.

The cause was submitted to the court, sitting as a jury, upon the pleadings and testimony, which resulted in a judgment against appellant and his bondsmen upon the replevin bond for the return of the drilling rig or its value, from which is this appeal.

The facts are undisputed, and, in substance, are as follows: Appellant was the owner of the drilling rig complete, having purchased same for $11,000 three years prior to leasing it to the Prescott Oil Company. On the 24th day of January, 1924, he leased same to the Prescott Oil Company for a monthly rental of $600 per month to drill oil wells in certain territory in Nevada County. After

executing the lease and delivering the drilling rig complete to the lessee he went to Florida, and did not return until about the time L. M. Carter and six other laborers attached the drill and shut down the well because they had not been paid their wages in the total sum of $1,726 for work which they performed in and about drilling a test well in said county. Appellant never had any connection whatever with the Prescott Oil Company and had nothing to do with the drilling of the well or hiring the labor. It is true that appellant was not made a party to the suit of L. M. Carter and the other laborers against the Prescott Oil Company, but, as we understand the record, the fact that Carter and the other laborers worked with and in and about the drill while the test well was being drilled, and that the Prescott Oil Company owed them $1,726 for labor so performed, is not questioned. In other words, the undisputed testimony discloses this to be the fact. Act No. 513 of the Acts of the General Assembly of 1923, under which the laborers claimed a lien upon the drilling rig complete, is as follows:

"Section 1. Any person or persons working in or about the drilling or operation of any oil or gas well, or any well being drilled for oil or gas, in this State, shall have a lien on the output and production of such oil or gas well for the amount due for such work, and in addition thereto his lien shall attach to all machinery, tools, equipment and implements used in such drilling or operation of such oil or gas wells, including all leases to oil or gas rights on the land and upon which such drilling or operations shall be performed. Such lien shall be superior or paramount to any and all other liens or claims of any kind whatsoever, and no contract, sale, transfer or other disposition of said property shall operate to defeat said lien, and said lien shall be enforced in the same manner now provided by law for the enforcement of laborers' liens.

"Section 2. This lien shall not be construed to be a lien upon the real estate of the employer or lessee, but shall be a lien upon the personal property used and con-

nected with said drilling and operations and the output or production of said oil or gas lease on said land.''

The first question arising on this appeal is whether or not the act is unconstitutional on the alleged ground that its effect is to take the property of appellant and subject it to the payment of the debt of the Prescott Oil Company without due process of law. .

First. The act does not provide for the enforcement of the lien against the machinery, tools, equipment and implements used in drilling an oil or gas well without making the owner of the property a party to the suit. The act provides that said lien shall be enforced in the same manner now provided by law for the enforcement of laborers' liens. In such proceedings the owners of the property are necessary parties. In the instant case, appellant, the owner of the drilling machinery, was not a party to the attachment proceeding to enforce the lien, and it follows as a matter of course that the judgment or order of sale of the property was not binding upon him. It was his privilege to allege and prove that Carter and the other laborers had not performed labor in and about the test well in which the machinery was used, or that they were not entitled to the amount claimed by them. As stated above, the undisputed testimony reflects that the well where the machinery was being used was shut down by the attachment proceeding brought by Carter and the other laborers to enforce a lien against the machinery, etc., for labor which they had performed in and about, said well.

Second. Our construction of the act is that it gives a lien to laborers working in or about drilling operations of any oil or gas well on all machinery, tools, equipment and implements used in such drilling operations, irrespective of who may own the machinery. The fact that one man's property may be taken to pay the debt of another does not render the act unconstitutional. In the instant case, according to the undisputed testimony, appellant placed his property in the possession of the lessee, knowing the purpose for which it was to be used by him

and knowing that the statute quoted above gives a lien to laborers for services performed by them in and about the drilling operations, and he therefore voluntarily subjects his property to such liens as are given by the statute. He could have protected himself against the statutory lien in favor of laborers by requiring his lessee to give him a bond to pay the laborers' claims and to return it to him free from such incumbrances. A statute similar to act 513 was upheld as constitutional by the Supreme Court of California in the cases of *Church* v. *Garrison,* 75 Cal. 199, 16 P. 885, and *Lambert* v. *Davis,* 116 Cal. 292, 48 P. 123. Section 1 of the California statute provides that "every person performing work or labor of any kind in, with, about, or upon any threshing machines, the engine, horsepower, wagons, or appurtenances thereof, while engaged in threshing, shall have a lien upon same to the extent of the value of his services."

In the California cases the property had been leased by the owner, just as in the instant case, and the lessees had employed laborers and failed to pay them, and these laborers sought to enforce a lien under the California statute against the threshing machine, to collect the amounts due. It was said by the court that the act was "not unconstitutional, as authorizing a deprivation of the property of the owner without due process of law, because it gives a lien to one not employed by the actual owner." The California court further said: "That the actual ownership of the property was an immaterial circumstance —the obvious theory, and, as we deem it, the correct one, being that the one lawfully holding from the actual owner the possession and the right to operate the machine is to be deemed, for the purposes of the statute, the owner of the property."

The next and last question arising on appeal is whether said act 513, approved March 21, 1923, was repealed by act 615, approved March 23, 1923. The latter act contained the following section:

"Section 6. Remedy Cumulative. The provisions of this act shall not be construed to deprive or abridge

materialmen, artisans, laborers or mechanics of any rights and remedies now given them by law, and the provisions of this act shall be cumulative of the present lien laws of this State, except as herein repealed or modified.''

We have examined the latter act and find nothing in its provisions specifically repealing or modifying the provisions of act 513. On the contrary, the later act was clearly intended to strengthen and aid act No. 513.

No error appearing, the judgment is affirmed.