SMITH v. LUSTER.

Opinion delivered February 13, 1928.

1. MORTGAGES—PROTECTION AGAINST LABORERS' LIENS.—A mortgagee of a drilling outfit can protect himself against laborers' liens, either by taking possession of the property or by requiring the mortgagor to give a bond to pay the laborers.

2. MORTGAGES—PROTECTION AGAINST LABORERS' LIENS.—One who takes a mortgage on a drilling outfit is bound to know the kind of use to which it is to be put and probability of employment of laborers entitled to a lien superior to that of a mortgage, and should therefore take steps to protect himself against liens of laborers.

Appeal from Union Chancery Court, Second Division; *George M. LeCroy*, Chancellor; reversed.

*W. R. McHaney* and *H. B. Leathers*, for appellant.

*R. M. Hutchins, Goodwin & Goodwin* and *J. Hugh Wharton*, for appellee.

MEHAFFY, J. The appellants filed suit in the Second Division of the Union Chancery Court, on the 24th of December, 1925, against appellees, Harry Luster, Tom Nash and R. R. Bondurant, in the aggregate sum of $2,286, for labor and work which they had done and performed in the drilling of an oil well, located on the northeast quarter of the southeast quarter of the southwest quarter, section 1, township 16 south, range 16 west, Union County, Arkansas, and asking that a lien be declared upon the drilling rig, machinery and equipment, and the oil and gas produced from said well, to secure payment of said judgment; that the last of said labor was performed within the last ninety days prior to the filing of this suit; and gave the amount of each laborer's claim.

A decree was rendered by default, and afterwards a motion to set aside was filed and granted, and the chancellor made a finding of facts, finding the interest of each party, and, it appearing that other parties were necessary parties, the court ordered that they be served, which was done, and held that the plaintiffs were entitled to a lien on the leases, but that they were not entitled to a lien against the drilling rig and not entitled to a personal judgment against the defendants, Nash, King and Bondurant.

H. R. F. Goode filed an intervention, claiming that he held a mortgage on the drilling rig, and the court found that said mortgage was prior and paramount to all of the contracts between the parties to the suit, and granted H. R. F. Goode's intervention, holding that plaintiffs had no lien against the drilling rig.

The only question in the case is whether the liens for labor are superior and paramount to the lien of the mortgage.

Act number 513 of the Acts of the General Assembly of 1923 was construed by this court in the case of *Pilcher* v. *Parker,* 173 Ark. 837, 293 S. W. 738. Section one of the act provides:

"Any person or persons working in or about the drilling or operation of any oil or gas well, or any well being drilled for oil or gas, in this State, shall have a lien on the output and production of such oil or gas well for the amount due for such work, and, in addition thereto, his lien shall attach to all machinery, tools, equipment and implements used in such drilling or operation of such oil or gas wells, including all leases to oil or gas rights on the land and upon which such drilling or operations shall be performed. Such lien shall be superior or paramount to any and all other liens or claims of any kind whatsoever, and no contract, sale, transfer or other disposition of said property shall operate to defeat said lien, and said lien shall be enforced in the same manner now provided by law for the enforcement of laborers' liens."

Section two provides: "This lien shall not be construed to be a lien upon the real estate of the employer or lessee, but shall be a lien upon the personal property used and connected with said drilling and operations and the output or production of said oil or gas lease on said land."

In construing this act, this court, among other things, said:

"Our construction of the act is that it gives a lien to laborers working in or about drilling operations of any oil or gas well on all machinery, tools, equipment, and implements used in such drilling operations, irrespective of who may own the machinery. The fact that one man's property may be taken to pay the debt of another does not render the act unconstitutional. In the instant case, according to the undisputed testimony, appellant placed his property in the possession of the lessee, knowing the purpose for which it was to be used by him, and knowing that the statute quoted above gives a lien to laborers for services performed by them in and about the drilling operations, and he therefore voluntarily subjects his property to such liens as are given by the statute. He could have protected himself against the

statutory lien in favor of laborers by requiring his lessee to give him a bond to pay the laborers' claims and to return it to him free from such incumbrances. A statute similar to act 513 was upheld as constitutional by the Supreme Court of California in the cases of *Church* v. *Garrison,* 75 Cal. 199, 16 P. 885, and *Lambert* v. *Davis,* 116 Cal. 292, 48 P. 123. Section 1 of the California statute provides that 'every person performing work or labor of any kind in, with, about, or upon any threshing machines, the engine, horse-power, wagons, or appurtenances thereof, while engaged in threshing,' shall have a lien upon same to the extent of the value of his services.''

This court further quoted from the California court the following: ''That the actual ownership of the property was an immaterial circumstance—the obvious theory, and, as we deem it, the correct one, being that the one lawfully holding from the actual owner the possession and the right to operate the machine is to be deemed, for the purposes of the statute, the owner of the property.''

In the case decided April 25, 1927, construing this act, it will be observed that we said of the owner: ''He could have protected himself against the statutory lien in favor of laborers by requiring his lessee to give him a bond to pay the laborers' claims and to return it to him free from such incumbrances.''

Our statute with reference to mortgage of personal property provides: ''In the absence of stipulations to the contrary, the mortgagee of personal property shall have the legal title thereto and the right to possession.'' Section 7393, Crawford & Moses' Digest.

He would then, of course, stand in the same attitude as the owner of the property, because he is the legal owner and entitled to the possession of said property, and, as we said in the former case, could protect himself against the statutory lien in favor of laborers either by taking possession of the property, as he had authority to do under the law, or requiring the mortgagor to give him a bond to pay the laborers.

One taking a mortgage on a drilling outfit is bound to know the kind of use to which such property shall be put, and when he takes his mortgage he knows that laborers will probably be employed, who, under the statute above quoted, will have a lien superior to the lien of his mortgage. He should therefore take such steps as might be necessary to protect himself against liens of laborers.

We have already held the statute valid, and held that the laborer was entitled to his lien even against the owner of the property, and this case is controlled by the case of *Pilcher* v. *Parker, supra.*

The case is therefore reversed, and remanded with directions to enter a decree for a lien against the property in favor of the laborers.