ROBERTS *v.* TICE.

4-5492                                      129 S. W. 2d 258

Opinion delivered May 29, 1939.

398

*Saye & Saye* and *Lincoln & Harris,* for appellants.

*Will Steel, H. M. Barney, Frank S. Quinn, A. L. Burford, A. G. Sanderson, Jr., Willis B. Smith* and *Ben E. Carter,* for appellees.

McHaney, J. Appellants, M. E. Roberts and his brothers, who are referred to in the briefs as Roberts Bros., were the owners of an oil and gas mining lease on certain tracts of land in Miller county, holding same under the usual Arkansas form of lease in which one-eighth royalty was reserved in the fee owner or lessor, and on March 10, 1938, assigned same to Texarkana Drilling Company, reserving to themselves a one-eighth overriding royalty interest in the seven-eighths leasehold estate then owned by them. This assignment was

filed for record in Miller county on March 28, 1938, and it contained the following provision: "It is distinctly understood and agreed that as an additional consideration for this assignment, there is hereby specially excepted and reserved unto assignors, as an overriding royalty interest, one-eighth ($\frac{1}{8}$) of all of the oil, gas and other minerals produced, saved and marketed from the above described lands, and assignee, its successors and assigns, agrees to pay over and deliver to assignors (in addition to the one-eighth ($\frac{1}{8}$th) royalty interest stipulated to be paid to lessors in the aforesaid lease) one-eighth ($\frac{1}{8}$th) of all of the oil, gas and other minerals produced, saved and marketed from the above described tract of land, free and clear of all costs and expense except its proportionate share of *ad valorem* and severence taxes.

"As an additional consideration for this assignment, assignee agrees to commence the drilling of a well on said land on or before March 17, 1938, and agrees to prosecute the drilling of said well with due diligence until completed to a depth sufficient to test the present known producing horizon in the Miller county, Arkansas, extension of the Rodessa field. All costs and expenses incurred in connection with the drilling of said well, or any wells which may be drilled on said land, and all costs and expense incurred in producing, saving and marketing oil, gas and other minerals from said well, or any additional wells on said above described tract of land, shall be borne exclusively by said assignee, its successors and assigns, and no part thereof shall be chargeable to assignors or to assignors' said overriding royalty interest."

The assignees also agree to the following condition: "Assignee agrees to faithfully carry out and perform all of the obligations of the original lease insofar as same apply to the tracts and interest hereinabove described, including the implied obligation of lessee to protect the property from drainage from offset wells and to adequately develop said property and operate same in a prudent and workmanlike manner."

Appellant, C. E. Brower, was the owner of a like oil and gas lease on another tract of land in Miller county, and, on April 19, 1938, he assigned same to the Texarkana. Drilling Company, reserving to himself a one-eighth overriding royalty in the seven-eighth leasehold estate then owned by him. This assignment was filed for record promptly and contained the following provision: "Said reservation and interest out of and from said production shall be delivered to the credit of the assignor, C. E. Brower, free and clear of all costs and expenses whatsoever of developing, operating, maintaining, re-working, repairing and pumping said lease, the assignee, The Texarkana Drilling Company, Inc., an Arkansas corporation, assuming and agreeing to pay all such costs and expenses." It also contained this provision: "And any person, individual, firm, pipeline company or companies, running or purchasing oil from these lands and premises, are authorized and directed to pay the proceeds of said reservation direct to C. E. Brower, free of costs." Other appellants claim under conveyances from Brower of portions of his overriding royalty.

Thereafter, and during the year 1938, said Texarkana Drilling Company drilled three oil wells on the leased lands so assigned to them, and became heavily indebted to appellees who are either laborers or material furnishers, who performed labor or furnished material in developing the properties for oil and gas. They, appellees, brought suit to enforce their respective liens against said drilling company and against appellants. The drilling company was insolvent and a receiver for it was appointed. It made no defense. Appellants defended on the ground that their overriding royalty interest was not subject to the liens of appellees. The trial court held against them and this appeal is from a decree declaring and enforcing liens in favor of appellees, not only against the ⅞ of ⅞ of said leasehold estates owned by the drilling company, but also against the ⅛ of ⅞ of said leaseholds owned by appellants and which was never sold or conveyed by them to it.

In the view we take of the case, the only question necessary for our determination is whether the overriding royalty of appellants may be subjected to the liens of appellees. It was stipulated that none of the appellees had any express contract with any of appellants for the material and supplies furnished or labor performed and that they were furnished or performed after the assignments to the drilling company were executed and recorded.

It is well settled in this state that an oil and gas lease conveys an interest in the land. *Watts v. England,* 168 Ark. 213, 269 S. W. 585; *Sherveport-El Dorado Pipe Line Co. v. Bennett,* 172 Ark. 804, 290 S. W. 927; *Huffman v. Henderson Co.,* 184 Ark. 278, 42 S. W. 2d 221. Also that royalties under an oil and gas lease are interests in land. *Arrington v. United Royalty Co.,* 188 Ark. 270, 65 S. W. 2d 36, 90 A. L. R. 765.

Two acts of the General Assembly of 1923, Act 513, approved March 21, digested as §§ 8916 and 8917 of Pope's Digest, and Act 615, approved March 23, 1923, digested as §§ 8905 to 8915 of Pope's Digest, cover the subject of liens for laborers and material furnishers for oil and gas operations. Section 8916 of the Digest provides for lien for laborers only and they are given " a lien upon the output and production of such oil or gas well for the amount due for such work" and upon the machinery, tools, etc., and "all leases to oil or gas rights on the land upon which such drilling or operation shall be performed. Such lien shall be superior and paramount to other liens or claims of any kind whatsover—; and said lien shall be enforced in the same manner now provided by law for enforcement of laborer's liens." Section 8917 provides: "This lien shall not be construed to be a lien upon the real estate of the employer or lessee, but shall be a lien upon the personal property used and connected with said drilling and operations and the output or production of said oil or gas wells and the oil or gas lease on said land." We do not concur in appellants' criticism of this act as being loosely or carelessly drawn. Its only purpose was to protect laborers by permitting them to

have declared and enforced a lien for their wages earned by virtue of a contract or agreement with the owner of the lease or his agent on the personal property, including the oil or gas produced, and the leasehold interest of the lessee or his assignee.

The other act covered by §§ 8905 to 8915 inclusive is a very much more comprehensive act. By it a lien is given not only to persons who perform labor, but to those who "furnish fuel material, machinery or supplies" etc. Such lien is given to those "who shall under contract, express or implied . . . with the owner or lessee of any gas, oil or mineral leasehold interest in land . . . or with the trustee, agent or receiver of any such owner, perform labor, or furnish fuel material, machinery or supplies . . . shall have a lien on the whole of such land or leasehold interest therein . . . or lease for oil or gas purposes, the buildings and appurtenances, and upon the materials or supplies so furnished," etc., "Provided, that if labor, supplies, machinery or material is furnished to a leaseholder the lien hereby created shall not attach to the underlying fee title to the land." Liens under this act shall be established, preserved and enforced in like manner as are mechanics liens, except as otherwise provided, and priority is given the lien of the common laborer by § 8915.

As said by the late Chief Justice Hart, speaking for the court, in *Crown Central Petroleum Company* v. *Frick-Reid Supply Co.*, 173 Ark. 983, 293 S. W. 1012, "It is true that the foundation of the right to secure a lien for labor performed or material furnished must be a contract with the owner of the land upon which the lien is sought to be enforced, and, if there does not exist such a contract, express or implied, the person claiming it must fail. Thornton's Law of Oil and Gas, 4th Ed. Vol. 1, § 371. This holding is in accord with our construction of our materialman's lien statute. In *Burel* v. *East Arkansas Lumber Co.*, 129 Ark. 58, 195 S. W. 378, 10 A. L. R. 1017, it was held that the lien given by the statute must have its foundation in contract and must correspond

with the contract." This was said in construing § 1 of Act 615 of 1923, above quoted as § 8905 Pope's Digest.

It is conceded that the one-eighth royalty reserved to the owner of the land cannot be affected by the liens of appellees. The contract of appellees was made with the drilling company and not with appellants, owners of the one-eighth overriding royalty, and we think only the interest of the drilling company can be charged with or subjected to such liens. By § 4 of Act 615, § 8908 of Pope's Digest, it is specifically provided "that any lien, encumbrance or mortgage upon the land or leasehold interest at the time of the inception of the lien herein provided for shall not be affected thereby; and the holders of such liens upon land or leasehold interest shall not be necessary parties in suits to foreclose the lien hereby created." And the lien given by the act is only prior to "subsequent liens, encumbrances and mortgages." So, if appellants had conveyed to the drilling company the whole leasehold estate and taken a mortgage back to secure them in a one-eighth interest therein, as a part of the purchase price, assuming it could be done, their mortgages would have been superior to the liens of appellees. Instead, which is perhaps more practical and effectual, they carved out of the seven-eighths working interest, constituting the whole leasehold estate, a one-eighth overriding royalty and reserved that from the conveyance. This override never did pass to the Texarkana Drilling Company, and by a condition inserted in the assignment, heretofore quoted, provided that this one-eighth should not be liable for any expense of development, operation, etc. But even if we should say, and we do not, that this condition was ineffectual for the purpose intended, still we would have to say that this one-eighth interest reserved to appellants was at least an encumbrance on the leasehold estate, which is protected from the liens of appellees by § 8908 of Pope's Digest, just above referred to. It is at least an encumbrance and was prior to the liens of appellees. The word "owner" as used in the statute refers to the owner with whom lien claimants contract, and the lien attaches to

404

the property of the owner. When the statute says "the whole of the leasehold interest therein" it means the whole interest of the owner who made the contract.

Appellees rely on *Whitmore* v. *Harper*, 168 Ark. 1079, 272 S. W. 662; *Pilcher* v. *Parker*, 173 Ark. 837, 293 S. W. 738, and other cases. The Whitmore Case arose before the passage of the lien acts above cited. In the Pilcher Case it was held that the lien attached to the drilling machinery which was leased from the real owner by the operator and this court treated the operator as the owner. The decision was based on a California case which said: "That the actual ownership of the property was an immaterial circumstance—the obvious theory, and, as we deem it, the correct one, being the one lawfully holding from the actual owner the possession and the right to operate the machine is to be deemed, for the purposes of the statute, the owner of the property." That case involved a lien on personal property while here the lien is attempted to be asserted against an interest in real estate, the record title to which was burdened by a prior encumbrance of appellants. Or, stating it another way, the record title to which showed a conveyacne to the Texarkana Drilling Company of only 7/8 of 7/8 of the leasehold estate, which was all the leasehold the drilling company ever owned and all that could be subjected to these liens by virtue of a contract with it.

Appellees rely on the provision of said act 513, being the last sentence in § 8916, that, "Such liens shall be superior and paramount to any and all other liens or claims of any kind whatsoever, and no contract, sale, transfer or other disposition of said property shall operate to defeat said lien," but this provision has been changed, and modified, if not actually repealed by the later statute, § 4 of act 615, being § 8908 of Pope's Digest, above quoted. As above stated, said section expressly protects prior "liens, encumbrances and mortgages" from the liens created thereby. Said section does provide that: "The lien herein provided for shall attach to the machinery, materials, supplies and the specific improvements made in preference to any prior lien or

encumbrance or mortgage upon the land or leasehold interest upon which the said machinery, materials, supplies or specific improvements are located." In other words, a prior lien, encumbrance or mortgage on the land or leasehold only shall not come ahead of laborers and material men's rights to liens on the machinery, materials, supplies and specific improvements not specifically covered by the prior lien, encumbrance or mortgage, and justly so. If laborers and material men perform labor and furnish material to improve a leasehold already covered by a mortgage or other encumbrance, their right to a lien on the improvements is paramount, but not so to the leasehold.

To construe the statute as appellees contend would render it of doubtful constitutionality, which is always to be avoided. The two statutes above mentioned are to be construed together, in *pari materia*. They were passed at the same session of the legislature and were approved with but two day's difference in time. Whereever, they conflict, the later act must control, and the former yield.

We, therefore, hold that there can be no lien in favor of appellees as against the overriding royalty interest of appellants, Roberts Bros., and Brower, and, of course, those holding under conveyances from them or either of them of a portion of such interests. It follows that the decree of the trial court must be reversed and the cause remanded with directions to dismiss the complaints and interventions as to appellants.

HUMPHREYS, MEHAFFY and HOLT, JJ., dissent.