**BROOKS et al. v. SUPERIOR OIL CO.**

Civ. No. 536.

United States District Court,
W. D. Arkansas, El Dorado Division.

April 20, 1951.

--------

Bernard Whetstone, El Dorado, Ark., for plaintiffs.

Sam Pickard, Jr., and B. L. Allen (of Davis & Allen), El Dorado, Ark., H. W. Varner, Houston, Tex., for defendant.

JOHN E. MILLER, District Judge.

On March 5, 1951, the defendant filed a motion for summary judgment together with statement of the reasons and authorities in support of the same.

On March 7, 1951, the plaintiffs filed a motion to remand the case to the Ashley Circuit Court and on March 14 the defendant filed a statement of reasons and citation of authorities in opposition to the motion to remand.

On March 29, 1951, at the hearing on the motion to remand, the plaintiffs asked and were granted permission to withdraw said motion, which was accordingly done.

On April 7 the plaintiffs filed their response to the motion for summary judgment together with statement of the reasons and authorities in opposition to said motion.

In the statement in support of the motion for summary judgment, the defendant states: "It is urged that the basic facts necessary to be considered for the determination of this Motion are so narrowly drawn, and no real issue can be made with respect to those basic and material facts, this presents an ideal situation for the application of procedure of Summary Judgment, as provided in Rule 56 of the Rules of Civil Procedure [28 U.S.C.A.]."

In the response to the motion for summary judgment, the plaintiffs state: "There is no particular issue of fact remaining and the pleadings now reflect the facts and it remains only for the court to determine as a matter of law what the final judgment should be."

In the concluding prayer of their response, the plaintiffs pray that the court enter final summary judgment against the defendant in the amount of their original prayer.

The record now before the court reflects the following facts:

On February 12, 1951, the plaintiffs filed their complaint in the Ashley Circuit Court against the defendant and, after stating the citizenship of the plaintiffs and the defendant, alleged that on June 7, 1949, the defendant, being the owner of a certain oil, gas and mineral lease on land situated in Ashley County, Arkansas, entered into a written contract with one Claud R. McSpadden, which contract was later amended on July 15, 1949. The plaintiffs attached to their complaint a copy of the contract of June 7, 1949, and also a copy of the amendment thereto of July 15, 1949.

That pursuant to the agreement between the said Claud R. McSpadden and the defendant, the said McSpadden entered into operations on the leasehold and, during the course of his operations and between October 1, 1949, and December 16, 1949, the plaintiffs furnished the said Claud R. McSpadden materials of the value of $2,576.-32 which were used by him in the drilling of an oil well on the leasehold. Later the plaintiffs filed a suit in the Ashley Chancery Court and, on the 18th day of December, 1950, obtained a judgment against the said Claud R. McSpadden for said sum of money, with interest and costs. A copy of the decree of the Ashley Chancery Court is attached to the complaint.

That the plaintiffs had been unable to collect their judgment against the said Claud R. McSpadden and the return of the Sheriff of Ashley County on a special fieri facias disclosed that the defendant had sold and delivered possession of the lease including the producing oil well thereon to another party who is a non-resident of Ashley County, Arkansas, and who had taken possession of the lease and had held it continuously under a claim of ownership and had removed quantities of oil therefrom since September 25, 1950.

· That on December 15, 1949, the defendant entered into another written contract with the said Claud R. McSpadden to conditionally sell him certain iron or steel pipe described in the complaint, which pipe was either delivered to the lease or was in Ashley County, Arkansas, for the purpose of being used on the lease, and that the equitable interest of the said Claud R. McSpadden in the lease and in the pipe were subject to the satisfaction of plaintiffs' judgment but that the defendant had converted to its own use the lease and the pipe; that the value of the property converted by the defendant exceeded the amount of plaintiffs' judgment and that the plaintiffs were entitled to a judgment against the defendant for the conversion of said property.

In the motion for summary judgment, the defendant alleges that, under the terms of the agreement between it and McSpadden relative to the oil and gas leasehold estate, the said McSpadden was to have and acquire no right, title or interest in said estate unless and until the said McSpadden fully and completely performed and discharged each and all of the conditions to be performed by him as set forth in said agreement, as evidenced by the writing of June 7, 1949, and as amended by the writing of July 15, 1949.

That the said McSpadden failed to perform all of the conditions set forth in said agreement of June 7, 1949, as amended, and by reason of such failure the said McSpadden on September 25, 1950, had no right, title or interest in the oil and gas leasehold as to which any lien of plaintiffs could attach or from which plaintiffs could collect the amount of their judgment against McSpadden.

That the said McSpadden failed to perform his obligation to pay the defendant the purchase price of the pipe described in the Conditional Sales Contract and by reason thereof the said McSpadden, at the time such pipe was removed from Ashley

County, Arkansas, by the defendant, had no right, title or interest in such pipe as to which any lien of plaintiffs could attach or from which plaintiffs could collect the amount of their judgment against McSpadden.

The contract of June 7, 1949, between the defendants and Claud R. McSpadden is lengthy, but may be briefly summarized as follows:

The defendant, The Superior Oil Company, agreed that in the event of complete performance of the conditions set forth therein by McSpadden that it would assign all its right, title and interest in a certain oil and gas lease therein described, subject to the provisions of the lease.

The conditions referred to are as follows:

(1) McSpadden was required to commence operations for the drilling of an oil well upon some part of the lease on or before August 1, 1949, and to diligently and in good faith continuously prosecute the drilling to a depth sufficient to satisfactorily test, in the opinion of the company, the Cotton Valley sand, unless at a lesser depth oil should be discovered and produced on the lease in paying quantities.

(2) The employees and representatives of the company should have the right at all times to go upon the well premises and to witness all operations and, upon completion of the well, the company was to receive a full and complete set of cutting samples taken every fifteen feet from the bottom of the surface casing to the total depth of the well.

(3) The surface casing should be adequately cemented and maintained so that such samples might be taken therefrom.

(4) Adequate tests were required of all formations of reasonable thickness.

(5) A certified copy of the driller's log was to be furnished the company.

(6) A full daily report of all formations encountered was required.

Upon the completion at or below the depth required, if the well was termed a dry hole and should be plugged and abandoned as such, the company should be furnished with affidavits to that effect.

The contract further provided:

"This agreement may not be recorded or assigned by you (McSpadden) or by you made the subject of any lien or contract either voluntarily or involuntarily without the written consent of this company first had and obtained, and any action in violation of any of the provisions shall cause all your rights hereunder to terminate without notice."

There is attached to the contract a copy of the assignment of the lease that was to be executed by the defendant upon the performance of the conditions by McSpadden.

As heretofore stated, that contract of June 7 was amended on July 15 providing that the date for the commencement of drilling operations should be extended from August 1, 1949, to "on or before August 21, 1949" and an additional condition was agreed to as follows: "As soon as the physical condition of the above premises renders such operation practicable, you shall return to production the No. 1 well on said premises drilled by The Superior Oil Company and thereafter with due diligence produce same and market the production therefrom. As between the parties hereto the proceeds from said production shall pass to you in the event the contemplated assignment (Exhibit A–2) is delivered, subject to all the retained overriding royalties therein set out. If you forfeit your right to receive said contemplated assignment, then said proceeds shall be entirely ours; however, we will reimburse you for the reasonable and necessary expense incurred by you in producing said well and marketing the production therefrom."

The materials furnished by plaintiffs, the purchase price of which they are seeking to collect, were furnished by them to Claud R. McSpadden between the dates of October 1, 1949, and December 16, 1949, and used "in the drilling of an oil well on this leasehold."

Attached to the motion is an affidavit executed by M. U. Broussard, who was and is in charge of the production activities of the defendant company in the State of Arkansas. In the affidavit it is stated that Mr. McSpadden did not comply with

the agreement of June 7, 1949, as amended, in that, among other things, he failed to return to production the No. 1 well on the premises included in the agreement which had been drilled by the defendant company and never produced and marketed any oil therefrom, notwithstanding that during a period of time from the late summer of 1949 until the middle of December, 1949, the physical condition of the premises upon which said well No. 1 was located was such that there was no obstacle to the returning of said well No. 1 to production and the marketing of the production therefrom. That Mr. McSpadden made no effort and conducted no operations on the premises after December, 1949, and on May 1, 1950, executed a formal forfeiture and release of the company of its contract of June 7, 1949, as amended. The document, after referring to the execution of the contract and the amendment thereto, inter alia, states:

"Now, therefore, for and in consideration of the above premises, I, Claud R. McSpadden do hereby acknowledge that the precedent conditions and terms of the above mentioned letter agreement of June 7, 1949, as amended July 15, 1949 have not been performed by me and all rights to which I may have been entitled upon complete performance of said precedent conditions and terms have been forfeited and lost, and I do hereby disclaim and release unto The Superior Oil Company any and all rights I may have, or might have been entitled to acquire, under the terms of said agreement as amended."

Also attached to the motion is an affidavit executed by Virgil L. Smith, Chief of the Accounting Department of the defendant company, in which he states that McSpadden, on December 15, 1949, purchased the pipe involved herein wholly upon credit and that he did not pay any part of the $26,585, which was the agreed purchase price for said pipe and that McSpadden had acknowledged his default of said payment by instrument in writing dated March 10, 1951.

The instrument referred to recited that the sale of the pipe was made by the defendant to McSpadden on condition that McSpadden pay $26,585 in installments; that the first installment of $2,065 was due on or before February 1, 1950, and four subsequent installments of $6,130, each, were due on March 15, June 15, September 15 and December 15, 1950; that each of said installments was represented by a promissory note, and all of which notes were subject to acceleration at the election of the holder in the event of any default; that McSpadden had failed to pay the first above mentioned installment and that the entire indebtedness had been accelerated and that he wished to have said contract canceled and rescinded and said notes released; that the defendant company was willing to cancel and rescind the Conditional Sales Contract and to release the notes, provided the said McSpadden should execute and deliver to it a certain promissory note in an amount sufficient to cover all expenses of transportation and demurrage in connection with the movement of said pipe. The concluding paragraph of the document is as follows: "Now, therefore, for and in consideration of the above premises, I, Claud R. McSpadden do hereby release and discharge The Superior Oil Company from any right or claim I may have to the above described 32,000 feet of pipe under and by virtue of the terms of the above mentioned Conditional Sales Contract of December 15, 1949, and do hereby recognize that said contract at my request has been cancelled and rescinded and is of no further force or effect."

As heretofore stated, the plaintiffs filed their suit in the Ashley Chancery Court to foreclose their materialman's lien upon the interest of Claud R. McSpadden in the leasehold estate. The record does not show when that suit was filed, but the parties defendant were the said Claud R. McSpadden, Ed Watts, Charles Eberle and The Superior Oil Company, a corporation, and the decree of the court recites that on November 22, 1950, the plaintiffs appeared in person and by their solicitor, Bernard Whetstone; the defendant, Superior Oil Company, appeared by its attorneys, B. L. Allen, Sam Pickard and H. W. Varner; the defendant, Charles Eberle, appeared in

person and by his attorney, Lamar Williamson; the defendant, Ed Watts, appeared by his attorney, Walter L. Brown; the defendant, Claud R. McSpadden, did not appear although he had previously filed an answer by his attorneys, Mahony & Yocum. The court ordered that the case proceed to trial, but judgment as to the defendants, Claud R. McSpadden and Ed Watts, was reserved until such time as the deposition of the defendant, Ed Watts, might be available. The cause therefore proceeded to trial as against the remaining defendants, The Superior Oil Company and Charles Eberle, on the actions asserted by the plaintiffs against said defendants. Oral testimony of witnesses and documentary evidence was adduced by plaintiffs and, at the conclusion thereof, the defendant, Superior Oil Company, challenged the sufficiency of the evidence to warrant the court in granting the relief prayed for in the complaint of the plaintiffs as against it. Thereupon the court sustained the motion of the defendant, Superior Oil Company, and the cause of action of plaintiffs as against the said defendant was dismissed at the cost of the plaintiffs.

At a subsequent hearing on December 18, the deposition of the defendant and witness, Ed Watts, was available and the claim of plaintiffs against the said defendants, Ed Watts and Claud R. McSpadden, was submitted upon the evidence previously introduced and the said deposition, from which the court found that the plaintiffs, a partnership, had during the period from October 1, 1949, to December 16, 1949, upon the order of the defendant, Claud R. McSpadden, furnished materials to him in the total sum of $2,576.32, which materials were used by the said defendant in connection with drilling operations conducted by him in connection with a well located on the leasehold estate; that the plaintiffs had perfected their lien against the interest of Claud R. McSpadden, if any, in and to the leasehold estate under the land described in the lease. The decree specifically provides: "That said plaintiffs are entitled to a lien under the terms of Section 51–701 Arkansas Statutes of 1947 Annotated as against the interest or equity,

if any, of Claud R. McSpadden in the oil, gas and mineral leasehold estate, if any, in and under the following described land situated in Ashley County, Arkansas:"

Then follows a description of the land included in the lease and which was to be assigned to the said McSpadden upon performance by him of the condition of his contract with the defendant, The Superior Oil Company.

In the written argument in opposition to the motion for summary judgment, the plaintiffs state that the suit filed by them in the Ashley Chancery Court was an attempt "to obtain a judgment against all of the defendants on the theory of a joint enterprise and furthermore, and in the alternative, to have the working leasehold interest impressed with a lien for the materials which these plaintiffs furnished to drill well No. 3." The plaintiffs further state: "The court held that there was no joint enterprise and also held that the working interest to which The Superior Oil Company had the legal title was not subject to a lien for these plaintiffs' judgment but held that the equitable interest of McSpadden in the leasehold was subject to a lien in harmony with the decision of the Supreme Court of Arkansas in the case of Snodgress v. Huff, decided December 11, 1950, * * * 234 S.W.2d 505."

It will be borne in mind that the Ashley Chancery Court only declared a lien on the interest, if any, of Claud R. McSpadden in the leasehold. It did not hold that McSpadden had any interest in the leasehold that was subject to a lien. The Snodgress case, supra, does not aid the plaintiffs in their contention. In that case Crider, with whom the laborers and materialmen contracted, had an admitted equitable interest in the property sought to be encumbered with the lien, whereas in the instant case the facts reveal that McSpadden had not earned the right to an assignment of the leasehold and, therefore, had no interest whatsoever in it.

The statute, Section 51–701, Arkansas Statutes 1947, was analyzed in the case of Roberts v. Tice, 198 Ark. 397, 129 S.W.

2d 258, 261, 122 A.L.R. 1177. In that case the court said: "The word 'owner' as used in the statute refers to the owner with whom lien claimants contract, and the lien attaches to the property of the owner. When the statute says 'the whole of the leasehold interest therein' it means the whole interest of the owner who made the contract."

■ At the time the materials were furnished, McSpadden owned no interest whatsoever in the leasehold estate. He was not an agent of the defendant to drill the well nor was he a contractor of the defendant within the meaning of the statute. The mere fact that he was in possession of the leasehold interest and was engaging in drilling the well was not sufficient to make him an owner, and any person that furnished him materials or supplies did so at their peril insofar as obtaining a lien on the leasehold interest was concerned.

The plaintiffs failed to contract with the owner of the leasehold estate and, under the terms of the statute, could not acquire a lien upon the leasehold estate because it was owned by the defendant. See, Section 51-701, supra, Roberts v. Tice, supra, and Mansfield Lumber Co. v. Gravette, 177 Ark. 31, 5 S.W.2d 726.

The plaintiffs further contend that their lien attached as of the time the materials were furnished, which was between the dates of October 1, 1949, and December 16, 1949, and was paramount to any subsequent attempted conveyance by McSpadden, and that the decree of the Ashley Chancery Court adjudges that McSpadden did in fact have an equity in the leasehold estate. A mere reading of the decree convinces that the Chancery Court did not hold that McSpadden had any equity. It held only that the lien of plaintiffs would extend to any interest, if any, which McSpadden had in the leasehold estate.

The execution of the release and forfeiture by McSpadden on May 1, 1950, of any rights that he might have acquired under the contract between him and the defendant was not a recognition by the parties that McSpadden had acquired any rights, but no doubt the document was executed merely to clarify the relationship that might have been a source of litigation later between the defendant and McSpadden if McSpadden should have claimed that he had performed the conditions as required by the contract of June 7, 1949, as amended. No rights of McSpadden accrued because he did not perform the conditions precedent thereto and the acknowledgement of the forfeiture and release is only evidence of his admission that he did not acquire any rights in the leasehold interest by reason of said contract, as amended.

■ The same is likewise true of the release executed by McSpadden on March 10, 1950, pertaining to his conditional purchase of the pipe which the plaintiffs say was converted by the defendant. A mere reading of the Conditional Sales Contract, dated December 15, 1949, and executed by the defendant and Claud R. McSpadden is sufficient to convince that the title to the pipe did not pass from the defendant to McSpadden. A conditional sale transaction is "a transaction in which a seller transfers the possession of goods to a buyer, on credit, with the understanding that title to the goods shall not pass from seller to buyer until the latter has paid the price." See, Volume 4, Arkansas Law Review, Conditional Sales in Arkansas, Page 19.

■ Under such a contract, in the event of default by the purchaser, the seller at its election may do either of two things: (1) The seller may bring an action to recover the debt and thereby affirm the sale and waive the reservation of title; or (2) It may elect to take the property and by so doing cancels the debt. Provance v. Arnold Barber & Beauty Supply Co., Ark., 235 S.W.2d 970.

The defendant elected to take the pipe and by virtue of that action the right of McSpadden to acquire any title or interest in the pipe ceased.

The other contentions of the plaintiffs have been carefully considered by the court and the cases and authorities cited

have been examined, but none of said contentions appear to be meritorious and the motion of the defendant for summary judgment should be granted.

Judgment in accordance with the above dismissing the complaint of the plaintiffs and adjudging the costs against them is this day being entered.