AMERICAN NATIONAL BANK OF AUSTIN, TEXAS
*v.* Edward L. DUX, Christine DUX, His Wife, and William
G. STEVENSON

85-46                                            691 S.W.2d 851

Supreme Court of Arkansas
Opinion delivered June 24, 1985

310

*John W. Unger, Jr.*, for appellant.

*James J. Calloway*, for appellees.

GEORGE ROSE SMITH, Justice. This case presents questions of priority between (a) a mortgage lien held by the appellant bank upon the share of the working interest owned by the appellees Dux in several oil and gas leases under which oil has been produced for several years and (b) an oil well operator's statutory lien being asserted by the appellee Stevenson upon that same share of the working interest in the leases. The chancellor awarded priority to Stevenson upon the main issue and to the bank upon a minor issue. The bank's direct appeal and Stevenson's cross appeal bring both issues to us under Rule 29(1)(c) and (n). We affirm the decree.

For some time before the Duxes mortgaged their share of the working interest to the bank, they had been co-owners of that interest along with Stevenson and others. In that situation it is customary for the owners to select one of their number as the operator of the working interest. Stevenson was so designated, by oral agreement. He operated the wells for some time, advancing the necessary operating funds himself and looking to his co-owners for proportionate reimbursement.

On August 1, 1979, the Duxes, to secure a $50,000 promissory note, gave the bank a mortgage upon their interest in the leaseholds, the oil wells, and the appurtenant equipment, and upon their right in the future to receive payments from the purchaser of the oil being produced. The mortgage and a companion security agreement were promptly recorded. At that time the Duxes were not delinquent in their duty to reimburse Stevenson for operating expenses.

Almost three years later, however, on June 1, 1982, the Duxes stopped reimbursing Stevenson for his advances and stopped paying the interest on their debt to the bank. The bank asked the TOSCO company, the purchaser of the oil being produced, to make its payments to the bank rather than to the

Duxes. TOSCO began complying with that request.

On October 13, 1982, after the Duxes had stopped paying Stevenson and the bank, Stevenson filed suit to foreclose his operator's lien upon the Duxes' share of the working interest and related equipment. The Duxes and the bank were named as defendants. About six months later the bank brought suit to foreclose its mortgage, naming the Duxes and Stevenson as defendants. The two suits were consolidated for trial. TOSCO held its payments in suspense while the cases were pending. The chancellor gave Stevenson a first lien on the Duxes' share of the leasehold interest and equipment, but awarded the suspense funds to the bank.

■■ First, the direct appeal. Stevenson's suit was brought to foreclose his operator's lien (miner's lien) under Act 615 of 1923. Ark. Stat. Ann. §§ 51-701 to -710 (Repl. 1971). Section 51-701 creates a lien upon the leasehold interest itself (not upon the oil that is produced) and upon the oil well and its equipment, in favor of any person (here Stevenson) who furnishes labor, material, or supplies for the drilling of an oil well or for its operation and maintenance. Section 51-708 provides that the operator's lien is to be preserved and enforced in the same time and manner as mechanic's liens; provided, that where the labor or material was furnished under an open, running account, "the same shall be construed as a continuous contract," and the time for filing the verified account shall be computed from the time the last labor was performed or the last material or supplies were furnished.

■■ The bank argues that under the mechanic's lien law Stevenson was required either to give a 10-day notice of his lien or. to file suit within 120 days (formerly 90 days) after the Duxes defaulted on June 1. Ark. Stat. Ann. §§ 51-608 and -613; *Robins v. East Ark. Builders' Supply Co.*, 199 Ark. 1174, 137 S.W.2d 924 (1940). But under the mechanic's lien law the time begins to run not from the date of a default but from the time the last item is furnished. *Whitener* v. *Purifoy*, 177 Ark. 39, 5 S.W.2d 724 (1928). The time had not begun to run in this case, because Stevenson was still supplying labor and materials for the operation of the wells even at the time of the trial. Hence the notice provision and time limitation were not applicable to this case. The bank was obviously not prejudiced by Stevenson's having filed his

suit even earlier than he might have done to maintain his priority.

■ The bank also argues that since its mortgage was recorded back in 1979, Stevenson could not acquire priority with respect to funds advanced almost three years later. The chancellor correctly held, on the authority of *Smith* v. *Luster*, 176 Ark. 263, 2 S.W.2d 1104 (1928), that because the bank took a mortgage on a working interest in leases that were already in production, the bank was bound to know that the operator furnishing the necessary supplies for production might later have to assert a lien for his advances. Stevenson could not have asserted his miner's lien until some date after June 1, 1982, because until then the Duxes were current in their payments and owed him nothing. As we have said, under the lien laws the suit was not untimely. Certainly a delay of four and a half months after the earliest moment suit could have been filed was reasonable and did not prejudice the bank. Both the letter of the law and the underlying equities are on Stevenson's side on the direct appeal.

Second, the cross appeal. It was stipulated that during the pendency of the suit TOSCO had withheld $28,274.88 as the Duxes' share of the proceeds from the sale of oil. During the same period the Duxes' share of the costs advanced by Stevenson came to $15,408.50. The chancellor held that the bank was entitled to all the money held in suspense by TOSCO.

■ Stevenson argues that he is entitled to an equitable lien on the suspense fund to the extent of his advances, because the bank is receiving the benefit of his operation of the oil wells. We think this argument approaches the problem from the wrong direction. Under the miner's lien statute, Stevenson has a lien on the Duxes' interest in the leasehold and drilling equipment. As we have seen on the direct appeal, Stevenson had priority over the bank as to that property. Under the decree it is to be sold, with the proceeds of sale being applied first to the judgment in favor of Stevenson for his advances.

■ The situation is different as to the proceeds derived from the sale of the oil. The bank's mortgage from the Duxes gave it a contractual lien upon their share of that production. The miner's lien statute does not give the operator a lien on the oil produced, only on the leasehold and equipment. It was the Duxes' duty to reimburse Stevenson for his advances. They could not have demanded that the bank use its own funds to satisfy their

obligation to Stevenson. Whatever claim Stevenson may assert to an equitable lien on the suspense fund must be based upon his contractual relation with the Duxes, since he has no such claim under the lien statute or by contract with the bank. Consequently, if Stevenson is given priority over the bank with respect to the suspense fund, he is in effect forcing the bank to pay the Duxes' obligation, which the Duxes themselves could not have done. Hence the chancellor was right in awarding the bank priority with regard to the suspense fund, its lien being superior to Stevenson's derivative claim.

Affirmed.