## STANOLIND CRUDE OIL PURCHASING CO. v. BUSEY, Rec.

## BUSEY v. TEMPLEMAN, Rec.

Nos. 28381, 28478. May 2, 1939.

Rehearing Denied May 31, 1939.

Ray S. Fellows, Joseph A. Gill, Jr., and Charles R. Fellows, all of Tulsa, for Stanolind Crude Oil Purchasing Company.

M. A. Dennis, of Okmulgee, Horsley & Epton, of Wewoka, and Anglin & Stevenson, of Holdenville, for Clyde Busey, Receiver.

Hunt & Eagleton, C. H. Rosenstein, and Fist & Dewberry, all of Tulsa, for Neil Templeman.

L. G. Owen, amicus curiae for Carter Oil Company.

M D. Kirk and Gentry Lee, all of Tulsa, amicus curiae for Barnsdall Oil Company.

Alvin Molony, of Tulsa, amicus curiae for Skelly Oil Company.

J. C. Denton, R. H. Wills, J. H. Crocker, I. L. Lockewitz, and J. P. Greve, all of Tulsa, amicus curiae for Mid-Continent Petroleum Corporation.

WELCH, V. C. J. Herein is presented the question of which of two receivers, the one appointed by the district court of Hughes county, and the other appointed by the district court of Tulsa county, is entitled to proceeds from the sale of oil produced from certain premises under oil and gas leases held by Pringle and Marshall, lessees, while labor and materialmen's lien claims were being foreclosed in the district court of Hughes county. The leased premises were located in Hughes county. Actions to foreclose the liens were commenced in Hughes county, June 5, and June 12, 1933. These actions were later consolidated. No receiver was appointed at the time. On June 14, 1933, an action against Pringle and Marshall was commenced in the district court of Tulsa county by Murray Tool & Supply Company, apparently as a general creditor. On the next day, Neil Templeman was appointed receiver by the Tulsa county district court, with directions to take possession of all the property and assets of Pringle and Marshall wherever located within the state of Oklahoma. Pursuant thereto he took possession of the oil and gas leases in Hughes county in-

volved in the foreclosure action then pending in Hughes county. The leases from which oil was produced, involved in this action, are known as the "Church Lot lease," the "Atkins lease," and the "Gentner lease." Templeman, as such receiver, operated said leases, and, under certain "division orders," sold the oil produced therefrom to the Stanolind Oil Purchasing Company. Payment therefor was made to Templeman, receiver, down to January 1, 1934. Thereafter, pursuant to notice from counsel for the lien claimants in the Hughes county case, it withheld payment for oil delivered between January 1, and April 18, 1934 (March 16, 1934, on the "Church Lot" lease), amounting to $3,142.36.

On March 5, 1934, after many lien claimants, including Murray Tool & Supply Company, had intervened and presented their lien claims, judgment was entered in the Hughes county case establishing and foreclosing liens aggregating in amount some $32,000. On the same day a receiver was appointed in the Hughes county case, with directions to take possession of, advertise and sell the oil and gas leases, leasehold estates, etc. Some controversy then arose as to the right of possession as between the two receivers, but on March 16, and April 18, 1934, Templeman, receiver, relinquished possession to the Hughes county receiver, and thereafter Stanolind Company paid the Hughes county receiver for oil produced after said dates, until the sale of the property pursuant to the order and judgment of the Hughes county court. In the meantime the claim of the Atlas Supply Company for payment for supplies sold to Templeman, receiver, arose, resulting in an appeal to this court and decided by this court April 6, 1937, in Atlas Supply Co. v. Roberts, 180 Okla. 100, 68 P.2d 76.

Proceedings in the Tulsa and Hughes county cases appear to have been suspended pending the appeal in the Atlas Supply Co. case. In the meantime, Clyde Busey was appointed receiver in the Hughes county case. The Stanolind Company admits that it owes said sum of $3,142.36 for oil purchased by it between January 1, and April 18, 1934.

Hereafter the Tulsa county receiver will be referred to as "Templeman," and the Hughes county receiver will be referred to as "Busey."

The record discloses that Templeman appeared in the Hughes county case, and made claim to the funds involved, and that Busey appeared in the Tulsa county case and made claim to the same fund. The Stanolind Company was made a party in the Hughes county case, and an order was issued in the Tulsa county case for the Stanolind Company to appear and show cause why it should not be required to pay the money to Templeman. Both courts entered orders directing the Stanolind Company to pay their respective receivers. But on motion for new trial both orders were vacated and new trial granted.

On June 18, 1937, without further order having been made in the Murray Tool & Supply Company case in Tulsa county, Templeman commenced a separate action in the district court of Tulsa county against the Stanolind Company to recover the money in question. Stanolind Company answered and set up the adverse claim of Busey, filed the affidavit provided for in section 159, O. S. 1931, 12 Okla. St. Ann. sec. 238, and asked that Busey be brought in as a party. Plea of intervention was filed by Busey setting up the proceedings had in Hughes county and claiming that the leased premises, including the money in question, were at all times after June 5, 1933, in custodia legis, and subject to the exclusive control and judgment of the district court of Hughes county. Trial was had in Tulsa county, resulting in a judgment in favor of Templeman and against Busey and the Stanolind Company. From this judgment Busey appeals, making the Stanolind Company a party defendant in error.

The district court of Hughes county, on July 29, 1937, with all the parties in interest before it, entered an order and judgment directing the Stanolind Company to pay Busey the money in controversy, and the Stanolind Company appeals. The two cases are here consolidated.

Busey contends:

(1) That the district court of Tulsa county is without jurisdiction over the subject matter in controversy.

(2) The property and funds were in custodia legis and under the jurisdiction of the district court of Hughes county; and

(3) That Busey, as receiver representing judgment creditors on deficiency judgments, has an equitable lien upon the funds in question superior to that of Templeman, receiver.

The Stanolind Company, in its petition in error, aside from the assignment that

202

the court erred in overruling its motion for new trial in the Hughes county case, assigns as error only that the court erred in rendering judgment against the Stanolind Company.

In Atlas Supply Co. v. Roberts, supra, dealing with the identical leases involved, it was held that the property in controversy was in custodia legis after the action was commenced in Hughes county, although actual physical possession of the property involved was not taken by any officer, receiver, or other representative of the court.

In State ex rel. Ketchum v. District Court of Tulsa County, 82 Okla. 54, 198 P. 480, it was held:

"Where in an action a petition has been filed to enforce a lien against specific property, process issued and served as required by law in a court of competent jurisdiction, the property involved in the action is brought into custodia legis, subject to the power and control of the court, and no other court of co-ordinate or concurrent jurisdiction can, in an action commenced while the property is in such a situation, deprive the court which has already acquired the right of control and possession of such property of its jurisdiction; and the control of said property and jurisdiction of the court in which the action is first filed is not dependent upon actual physical possession of said property, but the court in which said action is first commenced is entitled to the possession of the res, because its possession of the same is indispensable to the exercise of its jurisdiction to the end that the res may be impressed by its decree."

It was determined in the Atlas Supply Company Case that the district court of Hughes county had jurisdiction over the property to which the laborers' and materialmen's liens attached. We must here determine if said lien extended to the oil production, since only the specific property to which the lien applied could be. said to be in custodia legis.

The Stanolind Company asserts that the lien statute of Oklahoma, section 10978, O. S. 1931, 42 Okla. St. Ann. sec. 144, does not apply to oil as and when produced.

Said section provides that a claimant coming within the statute "shall have a lien upon the whole of such leasehold, oil pipe line, or gas pipe line or lease for oil and gas purposes, the buildings and appurtenances, and upon the material and supplies so furnished, and upon any oil well supplies, tools, and other articles used in digging, drilling, torpedoing, operating, completing, or repairing any oil or gas well, or upon the

* * * wells, fixtures and appliances used in the operating for oil and gas purposes upon the leasehold for which said material and supplies were furnished or labor performed."

In the case of Black v. Giarth, 88 Kan. 338, 128 P. 183 (1912), the Kansas court construed our statute as it then existed, section 6170, C. L. O. 1909. As far as concerns the question now under consideration, our statute has not been materially changed from its original form and meaning. In that case the court said:

"The sole question presented is whether the statute, which is the same as that of Kansas (Gen. Stat. 1909, sec. 3924), gives a lien upon oil produced by operators under a lease. * * *

"Under this statute a lien may be acquired upon (1) the leasehold or lease, (2) the buildings and appurtenances, (3) the materials and supplies furnished, (4) the oil and gas well for which they were furnished, and (5) other wells, fixtures, and appliances used in operating upon the same leasehold. There is no mention of a lien upon the oil produced, and it is obvious that this could not be included under any of the terms used, unless possibly a lien upon a well should be deemed a lien upon the oil flowing through it. * * * But the oil is not a part of the well through which it flows. * * * The statute makes no attempt to fasten the lien upon the lessor's real estate, or to extend it beyond the interest of the lessee. As he has no title to the oil so long as it remains in the earth (Phillips v. Oil Co., 76 Kan. 783, 92 P. 1119, and cases there cited), no lien can attach to it as his property until it is brought to the surface, and, when that has been done, it is clearly no part of the well. The statute enumerates in great detail the property affected by the lien, and the oil would almost necessarily have been named in the list, if there had been a purpose that it should be included."

The state of Texas has long had a laborer's, materialman's and hauler's lien statute encompassing: The whole of the leasehold interest or lease for oil and gas purposes; the oil or gas well, wells, buildings, machinery, and appurtenances, etc., upon the leasehold. In the case of Crowley v. Adams Bros. & Prince (Tex. Civ. App. 1924), 262 S. W. 883, the court said:

"A laborer's lien upon oil and gas wells, etc., under the provisions of articles 5639A-5639H, Vernon's Ann. Civ. St. Supp. 1918, attaches only to such property as is specifically mentioned in the statute. The proceeds of the sales of oil produced from the well are not included in the statute.

The appellant, therefore, has no lien upon the money which the Magnolia Company owed for oil produced from these wells which it has purchased."

In these states, as in our state, the rule is applied that a lien statute must be strictly construed and its scope cannot be extended by implication.

From Texas we find these expressions:

"Such liens are creatures of the statute, whose terms are to be strictly construed and will not, by any theory, be enlarged to embrace matters beyond its letter. It may, as stated by plaintiffs in error, have been the legislative intent to broaden the lien so as to reach all cases such as is under consideration, but it did not do so." McClellan et al. v. Haley et al. (Tex. Civ. App. 1922) 237 S. W. 627.

"We cannot by implication or by an interpretation not authorized by the plain language of the act extend the provisions of same beyond that which it is apparent the Legislature alone intended same to apply." Williams et al. v. Magouirk (Tex. Civ. App. 1921), 235 S. W. 640.

In the case of American Tank & Equipment Co. v. T. E. Wiggins, 170 Okla. 504, 42 P.2d 115, this court said:

"Mechanics' liens are in derogation of the common law and exist solely by positive legislative enactment, and the courts should construe and enforce such statutes as remedial acts, but such statutes cannot be extended to meet cases not within their scope. Jones on Liens (2d Ed.) sec. 1554; Cincinnati, R. & M. Co. v. Shera (Ind. App.) 73 N. E. 293; Morris v. Louisville, etc., R. Co., 123 Ind. 489, 24 N. E. 335.

"The statute in question, being a remedial one, would be entitled to liberal construction, but the rule in such cases seems to be that liberality should be given to the enforcement of the lien, after the lien has clearly attached, and not in determining the question as to whether or not a lien exists. See Caulfield v. Pope, 17 Ind. App. 429, 46 N. E. 932; Jones on Liens (2d Ed.) sec. 1554, supra; Phillips on Mechanics' Liens (3d Ed.) sec. 18."

In Harris v. Parks, 77 Okla. 197, 187 P. 470, it was said:

"Statutory liens, however, have been looked upon with jealousy, and generally will only be extended to cases expressly provided for by the statute, and then only where there has been a strict compliance with all the statutory requisites essential to their creation and existence."

In McEwen Manufacturing Co. v. Anadarko Producer's Oil & Gas Co. et al., 115 Okla. 127, 241 P. 493, paragraph 1 of the syllabus reads:

"No rule is better settled than that liens can only be created by agreement, or by some fixed rule of law; and in either event the effect is the same. It is not one of the functions of courts to create them."

It has been held by our court that an oil and gas lease conveys no interest whatever in the land itself and no title to the oil in place within the leased premises; that such lease is but a grant to explore; a chattel real, and personalty. Kolachny v. Galbreath, 26 Okla. 772, 110 P. 902; Frank Oil Co. v. Belleview Gas & Oil Co., 29 Okla. 719, 119 P. 260; Duff et al. v. Keaton et al., 33 Okla. 92, 124 P. 291. Our lien statute contains an itemization of specific property affected by the lien; if there had been a purpose that oil as and when produced should be included, surely it would have been listed as one of the items. In reviewing the items listed it is apparent that oil and gas after production and the proceeds of the sale thereof can be brought within the terms of the lien statute only if the terms "leasehold," "lease for oil and gas purposes," or "oil and gas wells" are construed as generic terms that would include them. Standing against such a construction is not only the negative rule against extending the application of such a statute by implication, but also the affirmative rule that such property has been excluded from the application of the statute by implication. It is true that oil and gas is the basis of value of the items "leasehold," "lease for oil and gas purposes," and "oil or gas wells," but oil and gas as produced is not mentioned in the lien statute and it is not one of the functions of the court to create a lien. Oil and gas differs from growing crops and ordinary rents and profits in that it is exhaustible and not reproducible, and it is conceivable that some of the items above named to which a lien may attach might be drained of their value before foreclosure sale under the lien could be had. Under the peculiar circumstances we apprehend that equity would afford relief by way of injunction, or the lien claimant in foreclosure proceeding might procure the appointment of a receiver to produce and market under orders of the court and in the manner directed by the court, and to a degree protect his security pending foreclosure sale. The fact that the lienholder may adequately protect the items of property named in the statute pending their sale under foreclosure weakens any infer-

ence that related items of property not named therein may have been intended to have been included in the application of the statute, and strengthens the implication that such related items when not specifically mentioned were intended to be excluded.

We conclude that the lien provided by section 10978, O. S. 1931, 42 Okla. St. Ann. sec. 144, attaches only to such property as is specifically mentioned therein, and does not apply to oil as and when produced. The oil produced was not brought into custody of the law, subject to the power and control of the district court of Hughes county by the institution of the action to foreclose the lien based on section 10978, supra. The action of that court had not been invoked to subject the oil that might be produced to its equitable power at the time the oil was produced and sold. The oil itself never having been a subject of the action before the district court of Hughes county, it follows that the court was without authority to control the funds derived from the sale of the oil and to order the payments of such funds to its receiver, who was appointed subsequent to the time the oil was produced and sold.

Whereas, the custody and control of the funds derived from the sale of the oil by the district court of Tulsa county may be of interest to the owners of the leasehold at the time the oil was produced and of interest to their creditors, it does not appear that the receiver appointed by the district court of Hughes county to sell the property covered by the lien is a party with interest in the Tulsa county case.

The order and judgment of the district court of Hughes county is reversed.

The appeal of the receiver, Busey, from the order and judgment of the district court of Tulsa county is dismissed.

BAYLESS, C. J., and OSBORN, GIBSON, HURST, DAVISON, and DANNER, JJ., concur. RILEY and CORN, JJ., dissent.