TARHEEL DRILLING & EQUIPMENT CO. *v.* VALLEY STEEL PRODUCTS CO.

5-2025                                                330 S. W. 2d 717

Opinion delivered January 11, 1960.

[Rehearing denied February 8, 1960]

*Gaughan & Laney,* for appellant.

*Spencer & Spencer,* for appellee.

PAUL WARD, Associate Justice.   The question is: Does Arkansas Statutes, Section 51-701 which creates a materialmen's lien on an oil and gas leasehold also create a lien on oil produced therefrom and delivered to a pipe line?

Briefly, the issue arose in this manner.   Appellees, who had formerly obtained judgments against the owner of a certain oil and gas lease, brought action to impound funds in the hands of J. S. Brooks (a trustee of the owners) which funds were the proceeds of oil sold from a well on the leasehold and delivered to a pipe line.   Appellant (Tarheel Drilling and Equipment Company, Incorporated) claimed a prior and superior right to the oil proceeds by virtue of a previously asserted lien against the leasehold owners under the statute

above mentioned. The parties hereto entered into the following stipulation: "It is stipulated by and between Tarheel Drilling and Equipment Company, defendant, and Valley Steel Products Company, and Lane-Wells Company, plaintiffs, that the only question involved as between them is entirely a question of law — that is: 'Whether a Labor and Material Lien filed under Section 51-701 Ark. Stats. 1947, covers oil produced and delivered to a pipe line after the lien has attached against the leasehold interest'. If this question is answered in the affirmative then Tarheel Drilling and Equipment Company is entitled to the sum of $703.24 held by J. S. Brooks, but if answered in the negative then the plaintiffs, Valley Steel Products Company, and Lane-Wells Company are entitled to said sum of money".

Upon a hearing the trial court found: "That a properly filed labor or material lien under Section 51-701 Arkansas Statutes 1947, does not extend to and cover the proceeds of oil runs from the oil and gas well and the leasehold estate covered by said lien".

Said Section 51-701 reads substantially as follows: "Any person . . . who shall under contract . . . with the owner or lessee of any land, mine, or quarry . . . or mineral leasehold interest in land . . . perform labor or furnish material . . . used in . . . drilling . . . operating . . . completing, maintaining or repairing any such oil or gas well . . . shall have a lien on the whole of such land or leasehold interest therein . . . or lease for oil and gas purposes . . . and upon said oil well, gas well . . . mine or quarry, for which same (labor or materials) were furnished".

We gather from the pleadings and the stipulations that Tarheel's alleged lien is based upon the sale of equipment to the leaseholders in connection with operation developments of the lease. Although said Section 51-701 does not specifically give a lien on the oil which comes from the well, appellants say such is implied. They also call attention to the fact that the statute pro-

vides for a lien "on the whole of such land", but a closer look reveals that such is the case only where the owner of the land produces the well which is, of course, not the case here. It is true that if the lien covered the land it would also cover the minerals under the land. We have examined the case of *Moran* v. *Johnson*, 91 Ohio App. 120, 107 N. E. 2d 401, relied on by appellants but do not find it persuasive here because the court did not attempt to distinguish between the oil and leasehold. Neither are we persuaded by the cases cited by appellants holding that an oil and gas lease conveys an interest in the land. The reason is that the statute does not create a lien (in this instance) on the land but creates a lien only on the leasehold. It is also argued by appellants that since oil becomes personal property when removed from the ground the lien would attach when that event happens, citing *Reavis* v. *Barnes*, 36 Ark. 575, and *Bank of Commerce* v. *Tubbs*, 156 Ark. 487, 247 S. W. 1079. The fallacy in that argument is that the statute does not create a lien on the land (in this instance), nor does it specifically create a lien on the oil produced therefrom.

Although the exact question here presented has never been settled in this State it has been settled contrary to appellants' contentions in other jurisdictions which have statutes essentially like said Section 51-701.

One of the leading cases is *Stanolind Crude Oil Purchasing Company* v. *Busey*, 90 P. 2d 876, 185 Okla. 200, in which the court, among other things, said: "It has been held by our court that an oil and gas lease conveys no interest whatever in the land itself and no title to the oil in place within the leased premises; that such lease is but a grant to explore; a **chattel real,** and personalty. Our lien statute contains an itemization of specific property affected by the lien; if there had been a purpose that oil as and when produced should be included surely it would have been listed as one of the items . . . It is true that oil and gas is the basis of value of the items, 'leasehold', 'lease for oil and gas purposes' and 'oil or gas wells', but oil and gas as pro-

duced is not mentioned in the lien statute and it is not one of the functions of the court to create a lien". The holding in the above cited cases was followed and applied in the case of *Young* v. *Mayfield*, 316 P. 2d 162.

To the same effect as above is the case of *Black* v. *Giarth*, 88 Kan. 338, 128 Pac. 183. In this case the court in construing a statute like our own, among other things, stated: "Under this statute, a lien may be acquired upon (1) the leasehold or lease, (2) the buildings and appurtenances, (3) the materials and supplies furnished, (4) the oil and gas well for which they were furnished, and (5) other wells, fixtures, and appliances used in operating upon the same leasehold. There is no mention of a lien upon the oil produced and it is obvious that this could not be included under any of the terms used, unless possibly a lien upon a well should be deemed a lien upon the oil flowing through it . . . But the oil is not a part of the well through which it flows . . . The statute makes no attempt to fasten the lien upon the lessor's real estate, or to extend it beyond the interest of the lessee. As he has no title to the oil so long as it remains in the earth . . . no lien can attach to it as his property until it is brought to the surface, and when that has been done, it is clearly no part of the well". A statute like ours was construed in the case of *Crowly* v. *Adams Bros. & Prince* (Texas), 262 S. W. 883, wherein the court stated: "A laborer's lien upon oil and gas wells, *etc.*, under the provisions of articles 5639a-5639h, Vernon's Ann. Civ. St. Supp. 1918, attaches only to such property as is specifically mentioned in the statute. The proceeds of the sales of oil produced from the well are not included in the statute. The Appellant, therefore, has no lien upon the money which the Magnolia Company owed for oil produced from these wells which it had purchased".

There is another circumstance which confirms our conclusion that said Section 51-701 does not and was not meant to create a lien on oil which comes from a well. Section 51-701 was enacted by the 1923 Legisla-

ture (Act 615). The same Legislature also passed Act 513. Section 1 of the latter Act is now Section 51-320 of the Arkansas Statutes and it does provide for a "lien upon the output and production" of an oil well. In view of this we cannot say that the Legislature did not recognize a distinction between a lien on a leasehold and a lien on the output, or that it negligently omitted the latter from the provisions of Section 51-701.

It is our conclusion, therefore, that the decree of the trial court should be, and it is hereby, affirmed.

Affirmed.