**CITIES SERVICE OIL COMPANY, a corporation, Appellant (Defendant below),**

v.

**PUBCO PETROLEUM CORPORATION,**
Appellee (Plaintiff below).

No. 4051.

Supreme Court of Wyoming.

June 15, 1972.

W. F. Drew, of Brown, Drew, Apostolos, Barton & Massey, Casper, for appellant.

Houston G. Williams, of Wehrli & Williams, Casper, for appellee.

Before McINTYRE, C. J., and PARKER and McEWAN, JJ.

McINTYRE, Chief Justice.

This case involves the right of a company which has drilled an oil well to claim a lien for unpaid drilling costs against the royalty interest of a company which holds an overriding royalty interest.

Cities Service Oil Company entered into a farmout contract with The Colorado Corporation pertaining to acreage in the Kitty Field, a known producing oil field in Campbell County, Wyoming. The acreage covered by the farmout agreement was the SE¼SE¼ of Section 4, Township 51 North, Range 73 West.

According to its contract, Cities Service was to assign certain earned leases to Colorado when a well had been completed on the SE¼SE¼ of Section 4. It was agreed, however, that Cities Service would reserve unto itself an overriding royalty of 25%.

By order of the Wyoming Conservation Commission, the E½SE¼ of Section 4 was unitized into a single drilling and spacing unit. Pubco Petroleum Corporation held the lease on the NE¼SE¼ of Section 4. Thus, it had an interest in seeing that a well was drilled at the site fixed by the Conservation Commission for the drilling unit involved. This site happened to be in the center of the SE¼SE¼ of Section 4.

Pubco and Colorado resolved the problem of who was to drill and who was to operate their drilling unit by entering into an operating agreement. According to this agreement, Pubco and Colorado each had an undivided 50% interest. Pubco was designated as the operator. It agreed to drill the well and Colorado agreed to pay its share of the costs.

It should be mentioned that the operating agreement expressly gave the operator a first and preferred lien on the interest of "each party covered by this contract." There was no attempt, as far as the operating agreement is concerned, to suggest the right of a lien on the interest of third parties. Cities Service was not a party to the operating agreement.

Upon the failure of Colorado to pay its share of drilling costs, Pubco sought to enforce a lien not only against the interest of Colorado but also against the royalty interest of Cities Service. The district court held Pubco could do so and Cities Service has appealed.

The farmout contract between Cities and Colorado was dated March 16, 1970. Under such contract, the Colorado company agreed to drill a well in the approximate center of SE¼SE¼ of Section 4. By performance, it was agreed, Colorado would acquire rights in lands described in Exhibit "A"; and it was specified such rights "shall be subject to overriding royalty as provided in Exhibit 'A'." Upon completion of the well, Cities was obligated to assign to Colorado "in form and in language as is set forth in Exhibit 'A'" leases, insofar as they cover the lands described in such exhibit.

The assignment form to be used, when Colorado had completed its well, was attached as Exhibit "A." It was not executed. It contained this provision:

> "There is excepted and reserved unto Assignor from the leases and lands assigned herein * * * an overriding royalty of an undivided twenty-five percent (25%) of eight-eighths (⅞) of all oil, gas, casinghead gas and other minerals produced from lands assigned herein under said leases."

On April 1, 1970 (16 days after Colorado obtained its farmout contract), Pubco and Colorado entered into their operating agreement. It was recited that the parties were owners of oil and gas leases covering tracts of land described in Exhibit "A"; and that such parties had reached an agreement to explore and develop these leases and interests for oil and gas.

In the Exhibit "A" which was attached to that instrument was a list of the leasehold interests contributed by the parties

under such agreement. It listed certain leases as leases "contributed by The Colorado Corporation, successors in interest herein to Cities Service Oil Company by agreement dated _____, 1970."

After the well had been completed in the center of SE¼SE¼ of Section 4, Cities did in fact execute and deliver an assignment to Colorado. This was in compliance with its farmout contract; and the assignment was in the form and language previously agreed upon. The executed assignment was dated July 28, 1970.

The appellant states the question for our consideration on appeal is whether, under the provisions of §§ 29–27 and 29–29, W.S. 1957, C.1967, the overriding royalty interest of Cities Service is subject to the operator's lien claim asserted by Pubco. The appellee, in its brief however, says Pubco's claim has two facets: (1) a lien claim under the driller's lien laws of Wyoming; and (2) a lien claim under the operating agreement.

During oral argument, we understood counsel for appellee to say Pubco claims a lien by virtue of statute—not by contract. He then added, however, that an operator's lien probably applies also. We think we are correct in assuming counsel is not seriously contending Pubco has a lien on the interest of Cities Service by virtue of any contract. If he is so contending, the record does not bear him out.

There was no contract between Pubco and Cities Service under which a lien could be claimed. Moreover, no cogent authority has been cited for the proposition that Pubco has a lien against the interest of Cities Service by virtue of Pubco's operating agreement with Colorado. The only lien contracted for was a lien against the interest of Colorado. We will therefore confine ourselves to a consideration of whether, under the circumstances of this case, a lien is given by statute on the royalty interest of Cities Service.

Section 29–27, W.S.1957, C.1967, defines an owner, part-owner or lessee, for purposes of oil well liens. There can be no question about the description including Colorado in the case we are concerned with. The section then deals with situations where a lien provided for in the act attaches to an estate less than the fee. Thus, recognition is given to the fact that the lien may attach to an estate less than the fee.

Section 29–29, W.S.1957, C.1967, provides that every person (including a corporation) who drills an oil well, "by virtue of a contract * * * with the owner, part-owner or lessee of· any ·interest in real estate," shall have a lien. Of course Pubco drilled by virtue of a contract with Colorado and not by virtue of a contract with Cities Service. However, this section continues by providing that the lien shall be "upon the whole of the land or leasehold." [Emphasis supplied.]

If the section ended at this point, it might be debatable as to whether the lien in this instance attached to the whole of the fee or (since the disjunctive is used and a leasehold is less than the whole of the land) whether the lien attached only to the leasehold interest of Colorado, the contracting party.

But, inasmuch as a proviso is added to § 29–29, we need not decide what the effect would be without the proviso. Neither need we speculate as to the purpose the legislature had in inserting the proviso. The language of this pertinent clause is clear, unambiguous and determinative of the issue here involved. It states:

"* * * and provided, however, that if such labor is performed for, or materials or services are furnished to, the owner, part-owner or lessee of an estate less than a fee, the lien granted by this act [§§ 29–27 to 29–32, 29–34, 29–39] shall not extend to the underlying fee or royalty interest unless expressly provided by contract with the owner of the underlying fee or royalty interest * * *."

There can be no doubt about the services in this case having been furnished to an owner, part-owner or lessee of "an estate less than a fee," i. e., The Colorado

Corporation. Therefore, as expressly stated in the proviso, the lien shall not extend to the underlying fee or royalty interest—unless expressly provided by contract. There was, however, no such contract.

Counsel for appellee seeks to argue that the term "royalty interest" means "landowner's royalty interest." Of course, that adds something to the statute which simply is not there. We have no right or power to rewrite an act of the legislature by adding words to language which is already clear and unambiguous. Moreover, the argument of counsel overlooks the fact that the lien in such a case as the one dealt with does not extend to the underlying fee itself.

It would not be consonant to say the legislature intended to exclude only certain royalty interests from the lien when it excluded the entire underlying fee and royalty interest. Indeed, it appears the intent of the legislature was to restrict the lien in case of an oil well to the leasehold estate of the party who contracts for the drilling. Such a conclusion is consonant with the fact that the proviso under consideration applies where services are furnished to an owner, part-owner or lessee of "an estate less than a fee."

The appellee in the case we are concerned with relies primarily on the case of Adair v. Transcontinental Oil Company (1959), 184 Kan. 454, 338 P.2d 79. Counsel for appellee has submitted that this case is directly in point with the instant case before our court. He says the reasoning of the Kansas court is commended to the Wyoming Supreme Court.

We fail, however, to see wherein the *Adair* case is helpful in deciding the extent of the lien under our statute. It had to do with the matter of agency and not with the issue before us. Moreover, it is distinguishable because it involved a Kansas lien statute which had no provision comparable to the proviso contained in our § 29–29. In other words, there was no provision that the lien shall not extend to the underlying fee or royalty interest.

Also, the Kansas court recognized specifically in *Adair*, 338 P.2d 87, "* * * that the lien of one who performs labor and furnishes material for the operation and development of an oil and gas lease is a creature of statute and in derogation of the common law." Therefore, for purposes of our decision, we must look to Wyoming's lien statute and the limitations expressed therein on the extent of the lien.

In 1961 Chief Justice Blume dealt with a case involving the question of priority between a mortgage lien and a lien for labor and material furnished for an oil and gas lease. The case was Pheister v. Ogden Smelting & Refining Mills, Inc., Wyo., 364 P.2d 1078. In his opinion, Chief Justice Blume considered our lien statute (§ 29–29) and stated, at 364 P.2d 1081, the statute provides that the lien shall not extend to the underlying fee or royalty interest unless expressly provided by contract with the owner of the underlying fee or royalty interest.

In the *Pheister* case, like the case now before us, there was a land owner's royalty of 12½ percent, with an overriding royalty held by Carter Oil Company. At 364 P.2d 1083–1084, Chief Justice Blume stated:

"The lien of appellant seems to be subject to the underlying royalty interests of 12½ percent and the royalty interest of the Carter Oil Company in view of the fact that *these interests* are not affected under the provisions of § 29–29, W.S. 1957, it not appearing that the parties owning the underlying *royalties* made any contract with the appellant as mentioned in the foregoing section." [Emphasis supplied.]

In Roberts v. Tice, 198 Ark. 397, 129 S. W.2d 258, 262, 122 A.L.R. 1177, a lien statute similar to ours was construed and the court held there would be no lien in favor of appellees "as against the overriding royalty interests of appellants."

Oil and gas lien laws, like other lien laws, are purely statutory; they must be

strictly construed; and their scope cannot be extended by implication.[1]

It is clear from the record of the case we are dealing with that Pubco had full knowledge of the Farmout Contract between Cities Service and Colorado Corporation. Therefore, Pubco was aware, before it did any drilling, of the limitations on the interest of Colorado, including the agreed-upon overriding royalty of Cities Service. Specifically, it was aware that the interest of Cities Service was free from and not chargeable with the cost of development or production.

The term "overriding royalty" has been defined in numerous judicial opinions as an interest in oil and gas production at the surface, free of the expense of production, and in addition to the usual land owner's royalty reserved to the lessor in an oil and gas lease.[2] As stated in 2 Williams and Meyers, Oil and Gas Law, § 418.1, p. 341: An overriding royalty is, first and foremost, a "royalty interest."

If that be true, § 29–29 of our lien statutes applies in such a way that Pubco's lien "shall not extend to the underlying fee or royalty interest." This clearly means the lien shall not extend to the royalty interest of Cities Service.

### Additional Considerations

Counsel for appellee suggests several arguments in more or less shotgun fashion, which have nothing to do with the interpretation of our lien statutes. We have al-

ready made it clear, however, that liens are purely statutory and must be strictly construed. Therefore, we need not answer these arguments in great detail, but we will illustrate briefly why they do not and cannot influence the result.

 Appellee criticizes the farmout agreement between Cities Service and The Colorado Corporation, particularly the amount of overriding royalty. The implication seems to be that Cities Service has overreached Colorado, and its contract is too harsh. It is, of course, common knowledge that the amount of overriding royalty charged in a farmout depends on the extent to which a field is or is not proved and the amount of oil being produced from wells in the field. Moreover, we would have no basis for distinguishing between an overriding royalty of 25% and an overriding royalty of one percent.

It is academic that parties are free to make their own contracts and courts will not make or remake contracts for them.[3] Of course Pubco is in no position to claim the farmout from Cities Service to Colorado is void because that would leave it without any basis for a lien at all.

Appellee seems to suggest there should be a point in its favor because the farmout agreement called for lease assignments to be delivered to Colorado after the well was drilled and the lease assignments had been earned. Thus, there was no recording of the assignments until the well had been drilled.

1. La Bellman v. Gleason & Sanders, Inc., Okl., 418 P.2d 949, 954; Tarheel Drilling & Equip. Co. v. Valley Steel Prod. Co., 231 Ark. 510, 330 S.W.2d 717, 718–719; Stanolind Crude Oil Purchasing Co. v. Busey, 185 Okl. 200, 90 P.2d 876, 879; Bridgeport Machine Company v. McKnab (1933) 136 Kan. 781, 18 P.2d 186, 188; Elliott v. Big Jack Petroleum Company (Tex.Civ.App.) (1923), 255 S.W. 1018, 1020; Security Banking and Investment v. Flanagan (Tex.Com.App.) (1923), 254 S.W. 761, 762; and McClellan v. Haley, (Tex.Civ.App.) (1922), 237 S.W. 627, 629. See also 53 C.J.S. Liens § 5(b), p. 848; and 51 Am Jur 2d, Liens, § 38, p. 176.

2. Williams and Meyers, Oil and Gas Law, Manual of Terms volume, p. 314; Meeker v. Ambassador Oil Company, 308 F.2d 875, 882, 10 Cir.; Knight v. Chicago Corporation, Tex.Civ.App., 183 S.W.2d 666, 670, aff. 114 Tex. 98, 188 S.W.2d 564; Sullivan, Law of Oil and Gas, § 132, p. 239; 5 Oil and Gas Reporter, p. 979; and 5 Institute on Oil and Gas Law, 50.

3. Flora Const. Co. v. Bridger Val. Elec. Ass'n, Inc., Wyo., 355 P.2d 884, 886; McGinnis v. General Petroleum Corp., Wyo., 385 P.2d 198, 203; and Goodman v. Kelly, Wyo., 390 P.2d 244, 248.

■ Undoubtedly this practice in the oil business is as common as the practice in real estate transactions of escrowing contracts for deed, without recording the deed until performance by the purchaser. In any event, it is settled law in this state that, where there is actual notice, constructive notice is unnecessary.[4] It is apparent from the record and admitted by Pubco that it knew of the farmout contract between Cities Service and Colorado. Indeed, the operating agreement between Pubco and Colorado was based on such farmout contract.

In our case, the overriding royalty of Cities Service came into existence simultaneously with the creation of leasehold rights in Colorado—both originated under the farmout contract. Thus, they coexisted. According to § 29–29, W.S.1957, C. 1967, Pubco could claim no lien except "by virtue of a contract, express or implied, with the owner, part-owner or lessee" of some interest. We have previously made it clear that Pubco's only contract was with Colorado.

■ No lien can be created under our law without a contract with an owner or part-owner, either legal or equitable, upon the property upon which the lien is established. This was held to be true, under a statute similar to ours, in McInness v. Robinson, Okl., 341 P.2d 577, 581; and in Pace v. National Bank of Commerce of Tulsa, 190 Okl. 503, 125 P.2d 178, 179.

Colorado had no legal title until the contemplated well had been completed. However, it did have a potential or equitable interest; and courts recognize equitable liens.[5] But it must be remembered that Colorado's equitable and future interest or rights were at all times subject to a reservation by Cities of its overriding royalty. Therefore, Pubco could not acquire lien rights against the legal or equitable rights of Colorado, without those rights being subject to Cities' reservation of its overriding royalty.

Cities Service, under its farmout contract with Colorado, was entitled to receive information on the progress of the drilling promised by Colorado. Appellee finds fault with such provisions and calls them "indicia of ownership." There is no showing that these provisions are uncommon in a farmout from a major oil company to a company such as The Colorado Corporation.

In any event, Pubco had a contract with Colorado and not with Cities Service. We are shown no authority or reason for believing rights reserved by Cities Service in its contract with Colorado afforded any basis for believing Pubco would have a lien against the royalty reserved by Cities Service. The lien, if any, has to arise by statute and not by a series of provisions in a contract wherein the lien claimant is not a party.

There seems to be some intimation on the part of appellee that The Colorado Corporation may have been an agent of Cities Service. The Farmout Contract, however, dispels any such idea. It shows an arm's-length transaction between two companies, and we find nothing in the record to indicate any basis for saying that Colorado was the agent of Cities Service.

Section 29–29, W.S.1957, C.1967, clearly provides that the kind of lien claimed by Pubco shall not extend to the underlying fee or royalty interest unless expressly provided by contract. There being no contract for such lien with respect to the royalty interest of Cities Service, Pubco's lien does not extend to such royalty interest. Therefore, Pubco's claim of lien must be denied and dismissed insofar as the royalty interest of Cities Service is concerned.

Reversed.

GUTHRIE, J., not participating.

4. Western Standard Uranium Co. v. Thurston, Wyo., 355 P.2d 377, 386; Globe Min. Co. v. Anderson, 78 Wyo. 17, 318 P.2d 373, 384; and 66 C.J.S. Notice § 19, pp. 668–669.

5. See Childs Real Estate Co. v. Shelburne Royalty Co., 23 Cal.2d 263, 143 P.2d 697, 700; School Dist. No. 3, Clear Creek County v. Central Savings Bank & Trust Co., 113 Colo. 487, 159 P.2d 361, 364; and Price v. Universal C. I. T. Credit Corporation, 102 Ariz. 227, 427 P.2d 919, 925.