The PERMIAN CORPORATION, a
Delaware corporation, Plaintiff,

v.

ARMCO STEEL CORPORATION,
Defendant-Appellant,

and

Frank J. Gehrer and Hazel J. Ross,
Defendants-Appellees,

and

Classic Mining Corporation, Defendant.

No. 74–1164.

United States Court of Appeals,
Tenth Circuit.

Argued Nov. 13, 1974.

Decided Dec. 19, 1974.

Rehearing Denied Jan. 6, 1975.

Walker E. Anderson, Salt Lake City, Utah, for Hazel J. Ross, defendants-appellees.

William T. Schwartz, Casper, Wyo., for Armco Steel Corporation, defendant-appellant.

Before SETH, BARRETT and DOYLE, Circuit Judges.

BARRETT, Circuit Judge.

Armco Steel Corporation (Armco) appeals from a diversity based interpleader judgment entered March 7, 1973, by the United States District Court for the District of Wyoming in an action initiated by the Permian Corporation (Permian), purchaser of certain oil and gas production from two leaseholds covering lands situate in Carbon County, Wyoming, insofar as the proceeds thereof are attributable to the working interest owned by Classic Mining Corporation (Classic). Concurrent with the filing of the complaint which specially named thirteen claimants to the Classic proceeds with aggregate claims in excess of $270,000.00, Permian deposited the sum of $13,218.27 into the registry of the court representing the proceeds attributable to the Classic interest.

Following various pleadings, including pretrial memorandums, the cause came on for hearing on a twelve-page stipulation of facts entered into between the interpleading parties claiming as of December 26, 1973. No testimony was adduced. It was agreed that all of the claims for services and materials furnished Classic for development of the leasehold estates were lienable claims under the laws of Wyoming, properly prepared, timely filed against the property from which the production was realized, and that foreclosure suits had been filed and proceeded upon to judgments. It was also agreed that the services (labor) and materials furnished by the statutory lien claimants *preceded* in time judgments obtained and garnishments issued in aid of execution by two general creditors of Classic, Defendants-Appellees here, first one Frank J. Gehrer (Gehrer) in amount of $1,988.00 and next (in terms of execution priority), one Hazel J. Ross (Ross) in amount of $10,342.34. It was further agreed that Armco, whose judgment amounted to $30,651.75, was the only service and materialman lien claimant to give Permian the requisite notice of its lien claim and, further, that the Armco notice to Permian was given on May 30, 1972, after the Gehrer garnishment on Permian of September 9, 1971, but before the Ross garnishment on Permian of December 4, 1972.

The trial court entered Judgment (with special findings) on January 29, 1974. The Court found, inter alia: That Armco furnished materials to Classic and properly filed two Notices of Lien in the office of the County Clerk of Carbon County, Wyoming; that Armco obtained a judgment thereon in the amount of $30,651.75, in the District Court of Carbon County, Wyoming, on May 25, 1972, and on May 30, 1972, notified Permian of its claim against the proceeds of production attributable to Classic as provided pursuant to § 29–31, W.S.1957, C.1967; that Armco is the only lien claimant (re the furnishing of services and materials to the leasehold estates) that gave Permian the above notice, but that Armco *did not* issue any writ of garnishment in aid of execution of its judgment; that Gehrer, a general creditor, obtained judgment against Classic on February 18, 1971, in amount of $1,988.00, and gar-

nisheed Permian in aid of execution on September 9, 1971; that Ross, a general creditor of Classic, obtained judgment against Classic in amount of $23,114.84 on December 4, 1972, and garnisheed Permian in aid of execution on the same date; that the sole issue before the court involved the priority among the claimants to the deposited funds; that the state law of Wyoming, and not federal law, controls the nature and extent of the liens in light of the fact that all of the claims were reduced to judgments in Wyoming; that although Armco was the only lien creditor to comply with the notice provisions to Permian as required by § 29–37, W.S.1957, C.1967, even so, priority in time of service of the writ of attachment in aid of execution of judgment determines the superiority of conflicting attachments or garnishments and grants superiority over any lien claimant who relies on the service of notice following entry of judgment; that the lien, *until reduced to judgment, is inchoate, and that priority of any lien depends on the time it attaches to the property in question and became choate.* (Emphasis supplied). The Court relied upon Adamsville Lumber Company, Inc. v. Rainey, 348 F.Supp. 373 (W.D.Tenn. 1972) and cases cited therein for the general rule that:

> Once liens or claims are reduced to judgment they become choate, and any prior lien is merged in the judgment lien. The judgment lien is perfected by issuance of a writ of execution on the judgment. Under Wyoming law, the priority between writs of execution is determined by which party is first in time. Wyo.Stat. § 1–370 (1957), provides: ". . . [W]rit of execution first delivered to the officer shall be first satisfied."; that in the instant case only three parties pursued their claims to the point of obtaining execution and that among the three, Gehrer, LeRoy's and Ross, LeRoy's claim never attached for failure to give notice pursuant to § 29–31.

The Court's judgment, after allowance of attorney's fees and costs, was $1,988.00 in full satisfaction of Gehrer, who was declared to have a prior and paramount right to the balance of the deposited funds, and to Ross, who was determined to be next in right, with a superior right to the balance or $10,-342.34 as partial satisfaction of her judgment lien.

Armco, on appeal, declares that the only question for our determination involves *the priority* between Armco's statutory mechanic's and materialman's lien pursued to judgment with *notice* to the crude oil purchaser and the general judgment creditors, Gehrer and Ross, who *issued out a garnishment in aid of execution* to the funds in the hands of the crude oil purchaser. (Emphasis supplied).

Armco contends that the Trial Court erred in that: (1) as a matter of law Armco's lien was superior and prior to that of general executing judgment creditors Gehrer and Ross because the very purpose of the Wyoming statutory scheme is to protect the right of mechanics and materialmen against the specific lands from which production of oil and gas is obtained and proceeds of sale thereof realized and that the " . . . lien shall continue until such suit is finally determined *and satisfied* as provided under § 29–37, W.S.1957, C.1967."; (2) there is no legal precedent under Wyoming law for the holding that upon foreclosure of a mechanic's and materialman's lien the judgment lien is merged into and takes the place of the former "inchoate" lien and that the judgment foreclosing the lien is treated like any other judgment so that priority is predicated on the order of execution; (3) it held, as a matter of law, that the Armco lien was inchoate (being only partly in existence or operation until reduced to judgment and that, even then, the *priority of any* judgment lien depends on the time it attaches to the property in question and then becomes choate—operative); (4) it failed, as a matter of law, to rule that a mechanic's lien is distinct from an ordinary lien and that, as a consequence, Armco, by virtue of its me-

chanic's and materialman's lien had priority to the Classic proceeds of production held in the hands of Permian over general judgment creditors, Gehrer and Ross; and (5) in failing to rule, as a matter of law, that the Armco lien against the proceeds held by Permian dates back to the time materials were first furnished Classic under the lien claims, i. e., January 30, 1970, which date far precedes the Gehrer and Ross garnishments in aid of execution.

This is a case of first impression on the facts involved. Accordingly, Wyoming statutes and decisions are useful only as analogous tools. The author believes that it is unfortunate that the parties did not elect to present the unsettled question of important state law presented here for controlling resolution by the courts of the State of Wyoming. *See* Louisiana Power & Light Co. v. City of Thibodaux, 360 U.S. 25, 79 S.Ct. 1070, 3 L.Ed.2d 1058 (1959); Trigg v. Moseley, 433 F.2d 364 (10th Cir. 1970).

■■ We are not unmindful that a determination of state law by a federal district judge who is a resident of the state where the controversy arose, carries extraordinary persuasive force on appeal. Stafos v. Jarvis, 477 F.2d 369 (10th Cir. 1973), cert. denied 414 U.S. 944, 94 S.Ct. 230, 38 L.Ed.2d 168 (1973). With full recognition that Courts of Appeal cannot overturn holdings of the trial court unless they are determined to be clearly erroneous, we are compelled to hold that such action is mandated here. Rule 52, Fed.R.Civ.P., 28 U.S.C.A.; Williams v. Eaton, 468 F.2d 1079 (10th Cir. 1972).

## I.

Both appellant and appellees contend that Wyoming statutes and certain decisions interpretive of those statutes support their opposing contentions.

Appellant Armco relies upon Sections 29–7, 29–29, 29–31, 29–37, W.S.1957, C.1967, which relate to liens for work and labor done (services) and for material furnished, as support of its contention

that its lien rights are prior to and superior to those of Gehrer and Ross. The lien statement first filed in the office of the County Clerk of Carbon County, Wyoming, recites that the first work performed by Armco occurred on January 30, 1970, and the last on June 14, 1971. Armco's lien statement was recorded on July 12, 1971, all prior to the execution of the Gehrer judgment on September 9, 1971, and the Ross judgment on December 4, 1972.

The statutes relied upon by Armco are:

Section 29–7, W.S.1957, C.1967:

The lien for work and labor done and performed and for material furnished as aforesaid, shall be preferred to all other incumbrances which may be attached to or upon such building or other improvements or the ground, lot or land upon which they are situated or located, or either of them, *subsequent to the commencement of such* buildings or improvements. (Emphasis supplied).

Section 29–29, W.S.1957, C.1967, in relevant part:

Every person, corporation . . . who does work or labor upon, or furnishes or rents materials or services for constructing . . . operating, completing or repairing of any gas wells, oil wells . . . or for altering, repairing or constructing any oil derrick, oil tank or oil or gas pipelines . . . by virtue of a contract, express or implied, with the owner, part-owner or lessee of any interest in real estate . . . shall have a lien to secure the payment thereof, . . . upon said gas well, oil well, or other well and upon said oil derricks, oil tanks, oil or gas pipeline . . . and upon all material furnished to be used in connection with said improvement, and upon the whole of the land or leasehold including all other wells, buildings and appurtenances located upon said land or leasehold upon which said improvement may be located; . . . .

Section 29-31, W.S.1957, C.1967, extends the lien to the proceeds of the sale of oil and gas. It provides, inter alia:

> The lien provided for in this act [§§ 29-27 to 29-32, 29-34, 29-39] shall additionally extend to and cover all oil or gas . . . produced attributable to the interest which is subject to the lien and the proceeds thereof inuring to the working interest therein *as such working interest existed on the date labor was first performed or materials or services were first furnished.* (Emphasis supplied).

The aforesaid section (29-31), further provides that the crude purchaser shall withhold payments of the proceeds to the extent of the lien amount claimed until notified in writing that the claim has been paid.

Section 29-37, W.S.1957, C.1967, in part:

> Every . . . corporation . . . holding such lien may proceed to obtain a judgment . . . by civil action commenced . . . within six months after said filing of such notice and the *lien shall continue* until such suit be finally determined and *satisfied.* (Emphasis supplied).

Appellees Gehrer and Ross rely upon general judgment, execution, garnishment and attachment statutes of Wyoming, Sections 1-232, 1-243, 1-357, 1-358, 1-370, 1-371, and 1-580, W.S.1957, C.1967, and Wyo.R.C.P., Rule 69 and certain decisions in support of the trial court's judgment and their contention that Armco's judgment was dormant, inchoate and unperfected on the dates that Gehrer and Ross garnisheed Permian by execution, thus rendering the Gehrer and Ross claims superior and prior to that of Armco.

Appellees argue that when the labor and/or materialman lien of Armco was reduced to judgment that then the judgment lien was substituted for and took the place of the prior lien, and that the Armco judgment-lien remains dormant, inchoate and unperfected *until garnishment in aid of execution is issued by the Court for collection of the amount of the judgment.* (Emphasis supplied).

Appellees allege that the process to enforce a judgment in Wyoming shall be by a Writ of Execution, as provided under Wyo.R.C.P., Rule 69, and § 1-357, W.S.1957. They argue that the notice submitted by Armco to Permian following entry of the Armco judgment of May 25, 1972, was "merely a *unilateral* act on behalf of Armco, leaving Armco *inchoate,* whereas, a Garnishment in Aid of Execution on the Judgments, by Gehrer and Ross, are *choate* procedures by the Court and Sheriff for collecting the Judgments." (Appellees Brief, p. 5). On this predicate, appellees contend that the Armco Notice did not have the force and effect of the actions of the Court and Sheriff in relation to their claims. They cite us to: § 1-370, *supra,* in part, "in all other cases the writ of execution first delivered to the officer shall be first satisfied."; § 1-371, *supra,* in part, "The officer to whom a writ of execution is delivered shall proceed, immediately, to levy the same upon the goods and chattels of the debtor; . . . which are liable to satisfy the judgment"; § 1-232, *supra,* for the proviso that "When there are several orders of attachment against the same defendant, they shall be executed in the order in which they were received by the sheriff"; § 1-580, *supra,* for the contention that because Permian paid the proceeds into the Court by interpleader following the service of the writs issued by Gehrer and Ross, that the writs fastened to the money and followed it into the Registry "and continued to *attach* to said money." (Appellees Brief, p. 6); § 1-358, *supra,* which provides that the money held by Permian, so garnisheed, shall be bound to pay the Gehrer and Ross judgments from the time it was seized in execution; § 1-243, *supra,* which provides, in part, that an order of attachment shall bind the property attached from the time of service.

## II.

Appellees rely heavily on the opinion announced in Adamsville Lumber Com-

pany v. Rainey, *supra*, for the proposition that because Armco did not execute on its judgment prior to the executions effected on the Gehrer and Ross judgments that Armco's judgment has been and is dormant, inchoate and unperfected. The suit in *Adamsville* arose following a fire loss to a residential structure insured under a homeowners policy. Adamsville Lumber Company was the building contractor. The owners of the property had obtained a Farmers Home Administration loan with which to build the home. The Court rejected the contractor's claim to the insurance proceeds based upon its asserted priority thereto in reliance of its compliance with the Tennessee mechanic's and materialman's lien law because under the Federal "first in time, first in right" rule the prior recorded deed of trust in favor of the FHA had priority over the materialman's lien asserted under Tennessee law. The Court noted that this *federal rule* "has broad application and pertains not only to federal tax liens but also to federal mortgage liens." 348 F.Supp. 373 at 377. The Court also observed that the priority claimed by the contractor—as materialman under Tennessee law—

> has no merit here since Tennessee law cannot modify a Congressional statute and regulations giving the FHA priority . . . Clearfield Trust Co. v. United States, 318 U.S. 363, 63 S.Ct. 573, 87 L.Ed. 838 (1943) . . . In applying the Federal "first in time, first in right" rule, we must decide in favor of FHA's lien . . .

348 F.Supp. 373 at 377.

The *Adamsville* Court recognized that *if* it were not dealing with Federal statutes, regulations and interpretations governing the priority rights of the FHA, the building contractor would have established a *priority* to the insurance proceeds under Tennessee law. 348 F.Supp. 373 at 376.

The United States is not a party to the instant suit. Jurisdiction is predicated on diversity. Accordingly, reliance on *Adamsville*, *supra*, is misplaced. In *Adamsville*, the Court relied upon certain United States Supreme Court decisions upholding trial court applications of the so-called "federal common law" grounded on the premise that the federal interest was so strong and the regulatory statutes so comprehensive that a federal common law remedy must be "fashioned". Clearfield Trust Co., *supra*; Ivy Broadcasting Company v. American Telephone and Telegraph Company, 391 F.2d 486 (2nd Cir. 1968).

■ There is nothing in the record before us indicating that any agency of the United States has or claims any interest in the interpleaded proceeds. That being so, we must determine the applicable law of Wyoming in this diversity suit. There is no justification for the application of federal common law. Chavez v. Freshpict Foods, Inc., 456 F.2d 890 (10th Cir. 1972), cert. denied 409 U.S. 1042, 93 S.Ct. 535, 34 L.Ed.2d 492 (1972); McCord v. Dixie Aviation Corporation, 450 F.2d 1129 (10th Cir. 1971).

We further note that in *Adamsville, supra*, the Court recognized that the FHA had not complied with the Tennessee statute in regard to submitting notice to the contractor of its mortgage interest and that if the Tennessee law applied, considering the fact that the contractor—mechanic's and materialman lienor—had no actual notice of the mortgage, the contractor's lien would have gained priority over the FHA mortgage. The Tennessee statute, T.C.A. § 64–1108, read:

> Priority over mortgage.—If the contract be made with the mortgagor, and the mortgagee has written notice of the same, before the work is begun or materials furnished, and consent thereto, the lien shall have priority over the mortgage; and if he fail to object, in writing, within ten (10) days after receipt of the notice, his consent shall be implied.

By analogy, Pheister v. Ogden Smelting & Refining Mills, Inc., 364 P.2d 1078 (Wyo.1961), was concerned with the priority between a mortgage lien on the one hand and a lien for labor and material furnished to the oil and gas lease-

hold. The Court held that the mechanic's and materialman's lien claimant, *having given the statutory notice to the crude purchaser,* had a prior claim to the proceeds over the mortgagee who had not notified the purchaser. Significantly, in relation to the choate v. inchoate dispute involved in the case at bar, the Court in *Pheister* said:

> . . . the bank, the mortgagee, made no effort of any kind whatever to take possession or control of the oil produced on the leasehold . . . or the proceeds thereof up to the time when appellant's lien *became effective. The lien of the appellant must accordingly be held to be prior and superior to the claim* of the bank insofar *as the oil* and the *proceeds thereof are concerned.* (Emphasis supplied).

364 P.2d 1078 at 1083.

The *Pheister* decision was re-affirmed in Cities Service Oil Company v. Pubco Petroleum Corporation, 497 P.2d 1368 (Wyo.1972), where the Court, noting that oil and gas liens, like other liens, are purely statutory and must be strictly construed so that their scope cannot be extended by implication, held that Pubco, the driller-operator of a well on the leasehold estate, could claim no lien by virtue of § 29–29, *supra,* "except 'by virtue of a contract, express or implied, with the owner, part-owner or lessee' of some interest." 497 P.2d 1368, 1373. The Court, having taken notice that oil and gas liens are a creature of statute and in derogation of the common law, took notice of the statutory language contained in § 29–29, W.S.1957, C.1967, which provides inter alia, that if the labor is performed or materials or services are furnished, the lien *then* extends to the interest of the "owner, part-owner or lessee" with whom the mechanic and/or materialman contracted in the "whole of the land or leasehold." 497 P.2d 1368 at 1370.

### III.

■ While it is correct that an attachment writ predicated upon a valid judgment properly served *creates* a lien under the provisions of § 1–243, W.S.1957, (Platte County State Bank v. Frantz, 33 Wyo. 326, 239 P. 531, 1925), except in cases to set aside fraudulent conveyances, this same section exempts such property in the hands of the garnishee as may be by law exempt from execution. It is in this context of the case that we must hold that the appellants' mechanic's lien has priority over the Classic proceeds in the hands of Permian.

■ The lien of Armco became fully "choate" as against the appellees when Notice thereof was served by Armco upon Permian.

■ It is fundamental that the basic purpose of lien statutes, which are in derogation of the common law, is to create a new means of securing claims of particular classes of creditors and to prevent unjust enrichment arising from enhancement of property from which work and materials expended thereon would otherwise go without payment. United Pacific Insurance Company v. Martin and Luther General Contractors, Incorporated, et al., 455 P.2d 664 (Wyo.1969); Browning v. Allied Helicopter Service, Inc., 309 F.2d 712 (10th Cir. 1962). Thus, Wyoming has recognized the rights of subcontractors, whose liens were properly recorded but unsatisfied, to subject their liens to the oil and gas leasehold estates of the owner they had provided services or materials for at the request of the contractor, notwithstanding the fact that the owner had previously paid the contractor in full. Arnold v. American Pipe & Supply Co., 413 P.2d 874 (Wyo.1966). These and many allied decisions support the rule that the statutorily created mechanic's lien is akin to an "equitable lien" which has been defined as a right, not existing at law, to have *specific property* applied in whole or in part to the payment of a particular class of debts which may be created by express contract which shows an intention to charge some *particular property* with a debt obligation; or it may arise by implication from the relations and dealings of the parties whose interests are

involved. Morrison Flying Service v. Deming National Bank, 404 F.2d 856 (10th Cir. 1968), cert. denied 393 U.S. 1020, 89 S.Ct. 628, 21 L.Ed.2d 565 (1969). Thus, in Sargent v. Delgado, 492 P.2d 193 (Wyo.1972), the Court, in referring to Wyoming's statutory lien for things and materials furnished and work performed on any building, erection or improvement favorably quoted from the Missouri case of Schulenberg v. Hayden, 146 Mo. 583, 48 S.W. 472, that:

> . . . if there is a mortgage on the land, and a contractor, under contract with the owner of the equity of redemption, builds a new house upon the land, he has a mechanic's lien against the house, and the house may be sold, and may be removed from the land by the purchaser; *for this preserves to the mortgagee all the security he formerly had, and secures, as far as possible, the payment to the contractor for the work and materials he used in building the house.* . . . (Emphasis supplied).

492 P.2d 193 at 196.

By analogy, we suggest that the above rationale applies here between the general judgment creditors-appellees and the lienor-appellant. And in Sawyer v. Sawyer, 79 Wyo. 489, 335 P.2d 794 (1959), the Court stated, in reference to mechanic's liens:

> We also accept appellant's contention that an encumbrance created during progress of construction is obtained with notice that the builder *will be entitled to a superior lien providing only that timely and proper action is taken to establish the same.* (Emphasis supplied).

335 P.2d 794 at 797.

Of course, appellees' judgment liens are statutorily created. There is no dispute that all parties complied with the respective Wyoming statutes here involved. Even so, appellees argue that the mechanic's lien of appellant is dormant, inchoate and unperfected because Garnishment in Aid of Execution of its judgment was not issued and served upon Permian. Because appellees have accomplished just that, they insist that their priority is established.

We are not here concerned with any claim to the proceeds by any agency of the United States, and accordingly we need not relate to the federal "first in time, first in right" rule applied in such cases. Nor are we here involved in a contest between rival garnishment claimants to proceeds interpleaded by the garnishee, which, absent some Wyoming statute attaching a particular lien claim to said property, would involve only the recognition that priority in time of service of the writs of attachment determines the superiority of conflicting attachments or garnishments of the same indebtedness. L. C. Jones Trucking Co. v. Superior Oil Co., 68 Wyo. 384, 234 P.2d 802 (1951); § 1–232, W.S.1957; Great Falls Transfer and Storage Company v. Pan American Petroleum Corporation, 353 F.2d 348 (10th Cir. 1965).

The lien of Armco was a "choate" lien following service of the Notice upon Permian where, just as in United States v. City of New Britain, 347 U.S. 81, 74 S.Ct. 367, 98 L.Ed. 520 (1954), even though the City's liens for unpaid taxes and water rent had not been reduced to judgments they were held to be superior and prior to two foreclosed mortgages in that said liens were specific and:

> . . . perfected in the sense that there is nothing more to be done to have a choate lien—when the identity of the lienor, the property subject to the lien, and the amount of the lien are established.

347 U.S. 81 at 84, 74 S.Ct. 367 at 369. See also Director of Revenue, State of Colorado v. United States, 392 F.2d 307 (10th Cir. 1968). Also see Pheister v. Ogden Smelting & Refining Mills, Inc., *supra,* where the court, in dictum, said:

> *The date of priority (of the mechanic's lien) . . . must be held to relate back only to the time when the work and labor of the appellant was completed . . . .* (Emphasis supplied).

364 P.2d 1078 at 1083.

Of like significance is the holding in Director of Revenue, State of Colorado v. United States, *supra,* that the SBA mortgage met all of the elements required to create a choate lien and that, accordingly, *it became choate at the time the SBA mortgage documents were executed.* (Emphasis supplied). 392 F.2d 307 at 313.

The positive legislative enactment prescribing the conditions essential to the existence and preservation of a statutory lien may not be disregarded, and in order to create such a lien there should be substantial compliance with the requirements as to the filings of liens and notices of liens. 53 Am.Jur.2d, Mechanics' Liens, §§ 17–25; 51 Am. Jur.2d, Liens, § 39, p. 178. Upon compliance, it constitutes a statutory security interest in the nature of a mortgage for enforcing a claim which has supposedly added value to the specific property by reason of services and materials supplied, thereby effecting a preference or priority. 53 Am.Jur.2d, Mechanics' Liens, § 178, p. 697 and cases cited therein; 38 Am.Jur.2d, Gas and Oil, §§ 136–140; Annot. 59 A.L.R. 3rd, Oil and Gas—Mechanic's, Materialman's Lien, pp. 278–302. These decisions are distinguishable from those which have held that the lien *does not* attach to the proceeds of the production where the applicable mechanic's or materialman's lien statute does not so expressly provide. Chambers v. Nation, 178 Colo. 124, 497 P.2d 5 (1972); Archer v. Wedderien, 446 P.2d 43 (Okla.1968); Black v. Giarth, 88 Kan. 338, 128 P. 183 (1912).

"The effect of the failure of a lien claimant to serve the required notice on the owner, or to serve a . . . proper notice, depends upon the terms of the statute creating the requirement . . . .. Under the statutes in some states, a claimant required to give notice has no . . . enforceable lien . . . .." 53 Am.Jur.2d, Mechanics' Liens, § 178, p. 697 and cases cited therein; *See* also Arch Sellery, Inc. v. Simpson, 346 P.2d 1068 (Wyo.1959), for the rule that failure to file the mechanic's lien within the time permitted precludes its *existence* and renders the lien void and unenforceable.

The service of Notice on the owner or his agent, pursuant to the statute (of intention to claim a lien by a specific lienor, against specific property for a specific sum), operates, in effect, as a garnishment or equitable assignment of the amounts due or thereafter becoming due the contractor on the contract, and entitles the person claiming and serving the lien Notice to receive so much of the proceeds as will satisfy the claim. 53 Am.Jur.2d, Mechanics' Liens, § 177 p. 696.

An execution lien attaches to whatever title or interest the debtor has, subject to all prior equities, including existing encumbrances such as liens, mortgages and pledges. 33 C.J.S. Executions § 125, p. 291. Thus, although by judgment a new cause of action is created, we must hold that the advantages to which appellant Armco was entitled with respect to its compliance with the requirements of the Wyoming mechanic's and materialman's statutes were not destroyed by its judgment. Armco, as a particular statutory lien creditor against Classic, obtained a choate lien upon the proceeds of Classic's share of the proceeds of production in the hands of Permian upon service of the statutory Notice, and the previous entry of judgment in favor of Armco on the lien claim did not deprive Armco of the priority benefit of the lien. The lien of Armco was choate following service of the Notice on Permian. Arnold v. American Pipe & Supply Co., *supra;* Pheister v. Ogden Smelting & Refining Mills, Inc., *supra;* Director of Revenue, State of Colorado v. United States, *supra;* Morrison Flying Service v. Deming National Bank, *supra;* Savage v. McNeany, 372 F.2d 199 (10th Cir. 1967); United States v. L. R. Foy Construction Company, Inc., 300 F.2d 207 (10th Cir. 1962).

Reversed and remanded.